Jimmie Wayne JEFFERS, Petitioner–Appellant,

v.

Samuel LEWIS, Director, Arizona Department of Corrections, Donald B. Wawrzaszek, Superintendent, Arizona State Prison, Respondents–Appellees.

No. 86–1840.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 24, 1991.

Decided Aug. 31, 1992.

As Amended Sept. 17, 1993.

Donald S. Klein and Frank P. Leto, Deputy Public Defenders, Pima County Public Defender's Office, Tucson, AZ, for petitioner-appellant.

Paul J. McMurdie, Chief Counsel, Criminal Appeals Section, Attorney General's Office, Tucson, AZ, for respondents-appellees.

Before: PREGERSON and CANBY, Circuit Judges, and WILSON, District Judge.*

* The Honorable Stephen V. Wilson, United States District Judge for the Central District of California, sitting by designation.

AMENDED OPINION

PREGERSON, Circuit Judge:

Petitioner Jimmie Wayne Jeffers was convicted of first degree murder by an Arizona jury. After a sentencing hearing in 1978, the trial court found two aggravating circumstances and sentenced Jeffers to death. Jeffers's sentence was vacated and his case remanded for a new sentencing hearing after the Arizona Supreme Court's decision in *State v. Watson*, 120 Ariz. 441, 586 P.2d 1253 (1978). In *Watson*, the Arizona Supreme Court applied the principles of *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), which held that a sentencer in a capital proceeding cannot be restricted to the specific mitigating factors enumerated in the statute and cannot be precluded from considering any aspect of a defendant's character or background that the defendant offers as a reason to impose a sentence other than death.

At the supplementary resentencing hearing in 1980, the trial court again found two aggravating factors and again sentenced Jeffers to death. After the Arizona Supreme Court affirmed the conviction and sentence, and after exhausting his state remedies, Jeffers unsuccessfully petitioned the United States District Court for a writ of habeas corpus. *Jeffers v. Ricketts*, 627 F.Supp. 1334 (D.Ariz.1986). Jeffers then appealed to this court. With regard to the issues raised by Jeffers's murder conviction, we affirmed the district court's denial of the writ. With regard to the issues raised by Jeffers's sentence of death, we reversed. *Jeffers v. Ricketts*, 832 F.2d 476 (9th Cir.1987). The Supreme Court then reversed our ruling on the sentence, *Lewis v. Jeffers*, 497 U.S. 764, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990), and returned this case to us for resolution of the sentencing issues we did not consider in our earlier opinion. Now, after considering these remaining issues regarding the constitutionality of this sentence of death, we again reverse the district court and remand for issuance of the writ.

## I.

The Arizona capital sentencing statute requires the state trial court to preside over an evidentiary hearing on the existence of aggravating and mitigating factors. Ariz.Rev. Stat. § 13–703(B). The trial court is required to make findings on the existence of any aggravating factors listed in the statute. If the trial court finds any such aggravating factor exists, it must then make findings on the existence of mitigating factors. The final step requires the trial court to impose a sentence of death if it determines that there are no mitigating factors sufficiently substantial to call for leniency.

At the time Jeffers was resentenced in 1980, the statute listed five specific mitigating factors. *See* Ariz.Rev.Stat. § 13–703(G)(1)–(5). The statute also had been amended to include a general catch-all provision that made clear that the statutory list of mitigating factors was not exclusive. Thus, the amended statute provides that mitigating circumstances include "any factors proffered by the defendant or the state which are relevant in determining whether to impose a sentence less than death, including any aspect of the defendant's character, propensities or record and any of the circumstances of the offense: . . . ." Ariz.Rev.Stat. § 13–703(G). In this opinion, we use the label "nonstatutory mitigating factors" to refer to mitigating factors that are not specifically enumerated in subsections (G)(1)–(G)(5), but nonetheless are included in this broad catch-all provision.

On resentencing in 1980, the trial court sentenced Jeffers to death on the basis of two aggravating circumstances. First, the sentencing court found that, while committing the murder, Jeffers knowingly created a grave risk of death to another person in addition to the victim. *See* Ariz.Rev.Stat. § 13–703(F)(3). Second, the trial court found that Jeffers committed the murder in a manner that was "especially heinous, cruel

and depraved." Ariz.Rev.Stat. § 13–703(F)(6).[1]

On direct appeal after resentencing, the Arizona Supreme Court held that the "grave risk of death" aggravating factor did not apply to the facts of this case. *State v. Jeffers,* 135 Ariz. 404, 428–29, 661 P.2d 1105, 1129–30, *cert. denied,* 464 U.S. 865, 104 S.Ct. 199, 78 L.Ed.2d 174 (1983). The Arizona Supreme Court also held that the murder was not especially cruel but affirmed the finding that it was especially heinous and depraved. *Id.* 135 Ariz. at 429–30, 661 P.2d at 1130–31. The Arizona Supreme Court thus reversed the finding of one aggravating circumstance and modified the finding on the second. Nevertheless, instead of remanding the case to the trial court for resentencing, the Arizona Supreme Court affirmed Jeffers's sentence of death.

Jeffers maintains that the Arizona Supreme Court improperly affirmed his sentence even though it invalidated the finding of one aggravating factor and modified the finding of the second. Jeffers contends that the Arizona Supreme Court was required to remand his case for resentencing.

## II.

We believe that the Supreme Court's decision in *Clemons v. Mississippi,* 494 U.S. 738, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990), compels us to return this case to the Arizona courts. In *Clemons,* the jury sentenced the defendant to death after finding two aggravating factors and finding also that these aggravating factors outweighed the factors in mitigation. One aggravating factor, that the killing was "especially heinous, atrocious, or cruel," was unconstitutionally vague, and the jury's instruction on that factor did not include any narrowing construction. Thus, the sentence of death was based on both a valid and an invalid aggravating factor. Nevertheless, the Mississippi Supreme Court affirmed the sentence of death.

In Jeffers's case, the trial court worded its finding in the conjunctive, stating that the defendant committed the murder in a manner that was "especially heinous, cruel *and* depraved." (emphasis added).

---

1. The statute is worded in the disjunctive, and the Arizona Supreme Court has held that the (F)(6) aggravating circumstance is satisfied upon an appropriate showing of either cruelty, heinousness, or depravity. *State v. Wallace,* 151 Ariz. 362, 366–67, 728 P.2d 232, 236–37 (1986).

The Supreme Court in *Clemons* explained that when the decision to impose a sentence of death is based on both valid and invalid aggravating factors, a state appellate court can affirm the sentence only after conducting certain further analysis itself. First, the state appellate court might engage in some form of harmless error analysis. *Clemons*, 494 U.S. at 752–53, 110 S.Ct. at 1450. Second, it might carefully reweigh the mitigating evidence against the remaining valid aggravating factor or factors and conclude that the balance still required a sentence of death. *Clemons*, 494 U.S. at 748–49, 110 S.Ct. at 1448. The Supreme Court concluded that the opinion of the Mississippi Supreme Court did not clearly reveal that the court had undertaken either of these analyses. Because the opinion of the state supreme court was ambiguous, the Supreme Court held that the original constitutional error had not been cured.

 Following the analysis in *Clemons*, we conclude that when the Arizona Supreme Court invalidated one aggravating factor and modified the second, it could affirm the sentence of death only after conducting a harmless error analysis or reweighing the mitigating evidence against the remaining valid aggravating factors. The opinion of the Arizona Supreme Court, however, is not sufficiently clear to enable us to determine that the court conducted the appellate reweighing described in *Clemons*. Nor did the Arizona Supreme Court conduct a harmless error analysis. As a consequence, the sentence of death cannot stand. Further proceedings in the Arizona courts are required.

Section A explains that Arizona is a "weighing" state in which the analytical procedures described in *Clemons* apply. Section B explains that there was mitigating evidence to weigh against the remaining valid aggravating factors in Jeffers's case. Section C explains that the Arizona Supreme Court did not conduct a harmless error analysis in this case. Finally, Section D explains that the opinion of the Arizona Supreme

Court does not clearly reveal that the court conducted the type of appellate reweighing described in the *Clemons* decision.

### A.

The Supreme Court has noted that aggravating circumstances differ from state to state in the role they play in the statutory procedures controlling the capital sentencing decision. *See Clemons*, 494 U.S. at 744–45, 110 S.Ct. at 1445–46. A "weighing" state is one in which the ultimate sentencing decision turns on weighing the statutory aggravating factors against the mitigating evidence.

 When a state appellate court in a "weighing" state determines that a sentence of death is based on both valid and invalid aggravating factors, the sentence of death cannot be affirmed automatically. There must be further proceedings in the sentencing court or further analysis by the state appellate court itself. *See Clemons*, 494 U.S. at 754, 110 S.Ct. at 1451.[2] As the Supreme Court explained in *Clemons*, a state appellate court in such a situation may affirm a sentence of death only after conducting a harmless error review or reweighing the mitigating evidence against the valid aggravating factors. Arizona is a weighing state. When there is at least one aggravating factor, the Arizona statute calls for the sentencer to decide between life and death by evaluating whether there are "mitigating circumstances sufficiently substantial to call for leniency." Ariz.Rev.Stat. § 13–703(E).

At oral argument in this case, and in the United States Supreme Court, *see Richmond v. Lewis*, —— U.S. ——, 113 S.Ct. 528, 121 L.Ed.2d 411 (1993), the legal representatives of the State of Arizona acknowledged that Arizona is a "weighing" state as that term is used in the *Clemons* decision. Once the Arizona Supreme Court concluded that Jeffers was sentenced to death on the basis of invalid findings of aggravating factors, the rule of *Clemons* applied.

---

**2.** "An automatic rule of affirmance in a weighing state would be invalid under *Lockett v. Ohio*, 438 U.S. 586 [98 S.Ct. 2954, 57 L.Ed.2d 973] (1978), and *Eddings v. Oklahoma*, 455 U.S. 104 [102 S.Ct. 869, 71 L.Ed.2d 1] (1982), for it would not give defendants the individualized treatment that would result from actual reweighing of the mix of mitigating factors and aggravating circumstances." *Clemons*, 494 U.S. at 752, 110 S.Ct. at 1450 (citations omitted).

### B.

Even in a weighing state, invalidation of one of several aggravating factors may make no difference if there were no mitigating circumstances to balance. Although the trial court in this case did not find any statutory mitigating circumstances, it is clear that there was mitigation evidence for the Arizona Supreme Court to consider in any appellate reweighing conducted in accordance with the requirements of *Clemons.* This is not a case in which there was nothing in mitigation to balance against the aggravating factors.

Before imposing sentence on Jeffers, the sentencing court heard information regarding Jeffers's difficult childhood. Jeffers's mother told the court that Jeffers was a decent child until he became addicted to heroin and became involved in crime. Additional evidence in mitigation was presented about Jeffers's heroin addiction, and of heroin use and alcohol intoxication at the time of the murder. Jeffers presented the history of his stormy love-hate relationship with the victim, including evidence that she had provoked him by informing on him to the police.

The sentencing court considered whether this evidence met the standard of two separate statutory mitigating factors.[3] It did not discuss this evidence as nonstatutory mitigation. On review, the Arizona Supreme Court restricted its discussion to the facts upon which the trial court relied in handing down its special sentencing verdict. 661 P.2d at 1105. In affirming the trial court's findings, the Arizona Supreme Court agreed that the evidence did not meet the standard of the statutory mitigating factors. Like the sentencing court, the Arizona Supreme Court did not discuss whether Jeffers's mitigating evidence qualified as nonstatutory mitigation.

Although the Arizona Supreme Court did not discuss this evidence as nonstatutory mitigation, this evidence should have played a role in any appellate reweighing. Our holding in *Smith v. McCormick,* 914 F.2d 1153 (9th Cir.1990), makes it clear that there remained mitigating evidence to consider in such an appellate reweighing. In *Smith,* we held that the Montana courts erred by rejecting mitigating evidence of mental impairment simply because it did not rise to a level substantial enough to satisfy the wording of Montana's statutory mitigating circumstance. "Because the evidence of mental impairment did not rise to the statutory level of 'extreme' or 'substantial,' the evidence was 'rejected' as a mitigating circumstance, rather than considered, as a mitigating circumstance of lesser weight, along with other factors." *Smith,* 914 F.2d at 1167.

The uncontradicted evidence of Jeffers's intoxication and addiction qualified as nonstatutory mitigation. *Cf. Parker v. Dugger,* 498 U.S. 308, 314–16, 111 S.Ct. 731, 736, 112 L.Ed.2d 812 (1991) (discussing drug and alcohol intoxication as nonstatutory mitigation). Even if Jeffers's heroin addiction, intoxication, and relationship with his victim did not qualify as a statutory mitigating circumstance, the holding of *Smith v. McCormick* makes clear that these circumstances should have been considered as nonstatutory mitigating factors. *Smith* also explains that all the nonstatutory mitigating evidence must be considered in combination. 914 F.2d at 1168–69.

At the resentencing hearing, Jeffers also introduced evidence that he contin-

---

**3.** In considering the evidence that Jeffers was a heroin addict and was under the influence of heroin and alcohol at the time of the murder, the sentencing court inquired whether "[t]he defendant's capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law was significantly impaired, but not so impaired as to constitute a defense to prosecution." Ariz.Rev.Stat. § 13–703(G)(1). The sentencing court declined to find that Jeffers was "significantly impaired" in his ability to conform to the law or to understand that his actions were wrong. The Arizona Supreme Court affirmed the sentencing court's conclusion that the statutory mitigating circumstance of significant impairment was not proved. *State v. Jeffers,* 135 Ariz. at 431, 661 P.2d at 1132.

In considering Jeffers's relationship with the victim and the evidence that she informed on him to law enforcement authorities, the sentencing court considered whether "[t]he defendant was under unusual and substantial duress, although not such as to constitute a defense to prosecution." Ariz.Rev.Stat. § 13–703(G)(2). The sentencing court determined that Jeffers's evidence did not satisfy this statutory mitigating circumstance of "unusual and substantial duress."

ued to deny involvement in the murder when he spoke with a psychiatrist while under the influence of sodium amytal. Jeffers argued on appeal that this was mitigating evidence that the sentencing court had failed to consider. After concluding that the sentencing court had considered all the evidence at the trial and at the post-trial hearings, the Arizona Supreme Court rejected Jeffers's claim. Nevertheless, the Arizona Supreme Court accepted Jeffers's argument that the sodium amytal evidence was proper evidence in mitigation.[4] Thus, it appears that the sodium amytal evidence should be considered in some fashion·in any appellate reweighing of the evidence in mitigation.

 Thus, the record in this case contains nonstatutory mitigation evidence. Even if that mitigating evidence was not sufficiently substantial to call for leniency when weighed against the original aggravating factors, the removal of the invalid aggravating factor and the modification of·the valid factor can change the balance. *See Parker*, 498 U.S. at 321–323, 111 S.Ct. at 740. Someone must reweigh or perform harmless error analysis.[5]

### C.

 As *Clemons* explains, when a state appellate court in a weighing state finds that

a sentence of death is based on both valid and invalid aggravating factors, it may, in certain cases, affirm the sentence of death after determining the error was ·harmless. *Clemons*, 494 U.S. at 752, 110 S.Ct. at 1450.

 There is nothing in the opinion of the Arizona Supreme Court to suggest that it upheld Jeffers's sentence .on the basis of analysis for harmless error. The words "harmless error" do not appear in the Arizona Supreme Court's discussion of Jeffers's sentence. *Cf. Sochor*, ── U.S. at ──, 112 S.Ct. at 2123 (describing ambiguities in Florida Supreme Court's discussion of Sochor's sentence which prevented conclusion that the state supreme court had conducted a harmless error analysis). The Arizona Supreme Court did not discuss whether the invalid findings of aggravating circumstances contributed to the outcome of the sentencing proceeding. Nor did the court discuss whether or not the outcome would have been the same in the absence of the invalid findings. We conclude that the Arizona Supreme Court did not engage in a harmless error analysis in this case.[6]

### D.

The second alternative course open to the Arizona Supreme Court was to reweigh the

---

4. The Arizona Supreme Court noted that while sodium amytal evidence would not ordinarily be admissible in court, evidence in mitigation did not need to meet normal standards of admissibility. In holding that the sodium amytal evidence was admissible as mitigation evidence, however, the Arizona Supreme Court did not clearly explain exactly how it was relevant. Defendants are often permitted to suggest that residual doubt about their guilt is a reason for a sentence less than death. Nevertheless, the Constitution does not entitle defendants to raise such arguments. *Franklin v. Lynaugh*, 487 U.S. 164, 172–73, 108 S.Ct. 2320, 2326, 101 L.Ed.2d 155 (1988). At oral argument, Jeffers suggested that his denial of responsibility for the murder while under the influence of sodium amytal supported the argument that·he was mentally impaired at the time of the crime. *Cf. Godfrey v. Kemp*, 836 F.2d 1557, 1559–60 (11th Cir.1988).

5. This is not a case of the State of Arizona rejecting unpersuasive evidence. Jeffers clearly satisfied the Arizona statutory requirement of proving facts in mitigation by a preponderance

of the evidence. For example, the sentencing .court found. that the defendant "was an addict and was both drinking and using narcotics on the date of the offense." Similarly, the court found that the defendant "may have had reason to be provoked and was under some stress." The Constitution requires that the sentencer be permitted to give some effect to these adequately-proven mitigating facts, even if they do not establish impairment or duress severe enough to satisfy a statutory mitigating circumstance. Finally, even in a case where the sentencing court fails to find the existence of *any* mitigating factors, reliance on an invalid aggravating factor nevertheless requires the state supreme court to either undertake an express harmless error analysis, reweigh, or remand for resentencing. *Sochor v. Florida*, ── U.S. ──, 112 S.Ct. 2114, 119 L.Ed.2d 326 (1992).

6. At oral argument in this case, the Arizona Attorney General, represented by his Chief Counsel, Criminal Appeals Division, acknowledged that the Arizona Supreme Court did not conduct a harmless error analysis.

mitigating evidence against the remaining valid aggravating factor. Our task is to determine whether the Arizona Supreme Court performed the appellate reweighing described in the *Clemons* opinion. From our reading of the opinion of the Arizona Supreme Court in *Jeffers*, it is not clear to us that the court performed or intended to perform the kind of appellate reweighing contemplated in the *Clemons* opinion.

### 1.

In *Richmond v. Lewis*, the Supreme Court noted that its previous decisions "do not specify the degree of clarity with which a state appellate court must reweigh in order to cure an otherwise invalid death sentence." *Richmond*, — U.S. at —, 113 S.Ct. at 535. The *Richmond* decision cited to some opinions that included discussion of the degree of clarity required when a state appellate court affirms an otherwise valid death sentence on the basis of harmless error analysis. These cases furnish some guidance.

 A state appellate court is obligated to perform "meaningful review," and it does not fulfill that function "by simply reciting the formula for harmless error." *Sochor*, — U.S. at —, 112 S.Ct. at 2123 (O'Connor, J., concurring). "An appellate court's bald assertion that an error of constitutional dimensions was 'harmless' cannot substitute for a principled explanation of how the court reached that conclusion." *Id.* As the Court suggested in *Clemons*, some forms of harmless error analysis would require "a detailed explanation based on the record." *Clemons*, 494 U.S. at 753, 110 S.Ct. at 1451.

Justice O'Connor's opinion in *Sochor* suggests that an appellate court's decision to uphold an otherwise invalid sentence of death cannot survive review by simply reciting a boilerplate sentence.[7] The appellate reweighing described in the *Clemons* decision contemplates more than simply stating that the appellate court has concluded that the factors in mitigation do not outweigh the

factors in aggravation. Similarly, an appellate court's conclusory restatement of the statutory language that there are no mitigating factors sufficiently substantial to call for leniency would not save an otherwise invalid sentence of death. Keeping these principles in mind, we turn to the opinion of the Arizona Supreme Court.

### 2.

 The text of the Arizona Supreme Court's decision in Jeffers's case refers briefly to some sort of weighing process. It is not clear to us, however, that the court was describing the type of review required by *Clemons*.

The first reference to weighing appears in the court's introduction to the portion of the opinion discussing the sentencing proceeding, in which the court describes the scope of its appellate review:

> In death penalty cases this court independently reviews the facts that the trial court found established the presence or absence of mitigating circumstances, and we determine for ourselves if the latter outweigh the former when we find both to be present.

135 Ariz. 428, 661 P.2d at 1129.

As this quotation demonstrates, the court announced that its discussion was restricted to the facts upon which the trial court relied in handing down its special verdict. Our reading of the Arizona Supreme Court's opinion reveals that, indeed, with regard to mitigation, the court did no more than review the sentencing court's findings and affirm its judgment that the evidence failed to meet the standards of two statutory mitigating circumstances. Neither the trial court nor the Arizona Supreme Court discussed the evidence as nonstatutory mitigation. According to the quotation from the court's opinion, the court "weighs" only when it sustains a trial court's findings that both aggravating and mitigating factors are present. Because the Arizona Supreme Court did not affirm any findings of

---

7. We do not view *Clark v. Ricketts*, 958 F.2d 851 (9th Cir.1991), as approving any such boilerplate recitation of reweighing by an appellate court. In *Clark*, there appears to have been no attack on the appellate weighing process, and there is no discussion of the issue in the opinion. The primary appellate issue in *Clark* was whether the state supreme court had adequately reviewed the record and applied the correct standard to determine that aggravating circumstances existed.

mitigating circumstances, the court's description of its method suggests that the court would not engage in any weighing process.

Nevertheless, the court refers to "weighing" in a conclusory sentence at the end of the opinion:

> We have carefully reviewed the record as required to determine whether the factors in mitigation outweigh the aggravating circumstances, and we find they do not.

135 Ariz. at 431–32, 661 P.2d at 1132–33 (citation omitted). We are not sure that this sentence communicates, or was intended to communicate, that the Arizona Supreme Court performed the type of appellate reweighing described in the *Clemons* decision.[8]

Although there was mitigating evidence to reweigh against the remaining valid aggravating factor, we cannot determine whether the Arizona Supreme Court acknowledged the presence of this mitigation. The opinion is ambiguous. In reviewing the findings of the sentencing court, the Arizona Supreme Court did no more than affirm that the evidence of heroin addiction, drug and alcohol intoxication, and the history of Jeffers's relationship with the victim failed to meet the standards of two statutory mitigating factors. The court did not expressly discuss the evidence as nonstatutory mitigation. The court appeared to acknowledge that the sodium amytal evidence was mitigating, but only in the context of rejecting Jeffers's argument that the sentencing court failed to consider it. The Arizona Supreme Court did not discuss any particular mitigating evidence in its brief, one-sentence reference to "weighing."

On the other hand, there are indications that the Arizona Supreme Court recognized

that there was mitigating evidence. These indications, however, are also ambiguous. The special verdict of the sentencing court states that there are "no" mitigating circumstances. The Arizona Supreme Court, however, characterized the findings of the sentencing court differently. It said that the sentencing court "found no mitigating factors sufficiently substantial to call for leniency." 135 Ariz. at 431, 661 P.2d at 1132. Such a characterization suggests that while there was mitigating evidence to enter into the balance, it did not call for leniency when weighed against both the invalid as well as the valid aggravating factors. *Cf. Parker,* 498 U.S. at 318, 111 S.Ct. at 738 (discussing significance of a court's finding of "no mitigating circumstances that outweigh the aggravating circumstances"). Such a characterization is ambiguous, however, because it is identical to the language of the statute. *See* Ariz.Rev.Stat. § 13–703(E) (the sentencing court "shall impose a sentence of death if ... there are no mitigating circumstances sufficiently substantial to call for leniency"). By stating that the sentencing court "found no mitigating circumstances sufficiently substantial to call for leniency," the Arizona Supreme Court may simply have been saying that the trial court considered the record and imposed a sentence of death.[9]

Another ambiguous reference to mitigating evidence leaves it unclear whether or not the Arizona Supreme Court recognized that there was nonstatutory mitigation to reweigh. In stating it "reviewed the record as required to determine whether the factors in mitigation outweigh the aggravating circumstances," the Arizona Supreme Court appears to acknowledge that there are factors in mitigation.[10] On the other hand, the same

---

**8.** The court's references to "weighing" are confusing in part because the first reference suggests that there will be no weighing at all in an opinion in which there are no trial court findings of mitigating circumstances to affirm. Yet the court includes a sentence suggesting that some kind of weighing occurred. This apparent contradiction contributes to the ambiguity of the opinion and impedes our ability to determine whether the court actually reweighed the mitigation against the remaining valid aggravating factor.

**9.** Similarly, in referring to the insufficiency of the mitigating evidence in the brief proportional-

ity review, the court simply recited the statutory language that there were "no mitigating factors sufficiently substantial to call for leniency." 135 Ariz. at 432, 661 P.2d at 1133. The conclusory one-sentence reference to weighing and this second conclusory sentence in the court's proportionality review constitute the opinion's only discussion of the relationship of the mitigating evidence to the factors in aggravation.

**10.** One factor in mitigation to which the Arizona Supreme Court may have been referring is the information that Jeffers was offered the opportunity to plead guilty and accept a term of imprisonment. In reviewing the record of this case,

sentence also refers to factors in aggravation even though the court had already determined that there was only *one* factor in aggravation to weigh in the sentencing equation. Because the court did not refer to any specific mitigating factors, and because the court referred to aggravating factors in the plural, it is possible that the court was describing a generalized formula rather than reporting the result of an actual reweighing of the specific mix of aggravation and mitigation in Jeffers's particular case.

■ Appellate reweighing, according to the *Clemons* opinion, cannot deprive defendants of "the individualized treatment that would result from actual reweighing of the mix of mitigating factors and aggravating circumstances." *Clemons*, 494 U.S. at 752, 110 S.Ct. at 1450. The *Clemons* opinion suggests that an appellate court must actually reweigh the remaining valid aggravating factor against the mitigating evidence. Such a reweighing would appear to require some discussion of the significance of the specific mitigating evidence in relation to the gravity of the remaining valid aggravating factor. There is no such discussion in the opinion of the Arizona Supreme Court. By stating that the factors in mitigation did not outweigh the factors in aggravation, the Arizona Supreme Court appeared to acknowledge that there were mitigating circumstances. Yet there was no specific discussion of those mitigating circumstances and no discussion of the gravity of the remaining aggravating factor. We cannot be sure that the Arizona Supreme Court conducted an "*actual reweighing* of the mix of mitigating factors and aggravating circumstances." *Clemons*, 494 U.S. at 752, 110 S.Ct. at 1450 (emphasis added).

3.

Our reading of recent decisions of the Arizona Supreme Court confirms our view that we cannot presume on this record that the Arizona Supreme Court undertook the type of careful appellate reweighing contemplated by the *Clemons* decision. Now that *Clemons* has clarified the duty of appellate courts in weighing states, it appears that the Arizona Supreme Court has been choosing to remand rather than reweigh when it finds both valid and invalid aggravating factors.

The decision that is most informative about the Arizona Supreme Court's view of its role in applying *Clemons* is *State v. Medrano*, 173 Ariz. 393, 844 P.2d 560 (1992). In *Medrano*, the trial court found two aggravating circumstances and no mitigating factors sufficiently substantial to call for leniency. After invalidating one of the two aggravating factors, the Arizona Supreme Court remanded for resentencing instead of reweighing. The court said:

> Because one of the two statutory aggravating circumstances found by the trial court must be set aside, and we can only speculate whether the court would have found mitigation sufficient to overcome the single remaining aggravating circumstance, we remand for another hearing and resentencing. *See State v. Schaaf*, 169 Ariz. 323, 335, 819 P.2d 909, 921 (1991) (one of two aggravating circumstances set aside; remanded for resentencing); *State v. Lopez*, 163 Ariz. 108, 116, 786 P.2d 959, 967 (1990) (same); *see also* Note, Appellate Review of Death Sentences: An Analysis of the Impact of *Clemons v. Mississippi* in Arizona, 34 Ariz.L.Rev. 141 (1992).

*Id.* 173 Ariz. at 398, 844 P.2d at 565. The law review note cited in *Medrano* criticized the Arizona Supreme Court's inconsistent past practice in cases in which *Clemons*

the federal district court concluded that information about such plea offers and plea negotiations is considered mitigating under Arizona law. *Jeffers v. Ricketts*, 627 F.Supp. at 1358.

Although there were references to the plea offers in the record of the trial proceedings, Jeffers failed to direct the sentencing court's attention to this information. The sentencing court stated that it searched the entire record for mitigation, but it did not mention the plea offers in its special verdict.

Jeffers did bring the plea offers to the attention of the Arizona Supreme Court in the direct appeal. Thus, the Arizona Supreme Court was clearly aware of the plea negotiations when it referred to "factors in mitigation." 135 Ariz. at 431–32, 661 P.2d at 1132–33. Because of our holding in this case, we need not determine whether a court's affirmative statement that it searches the record independently for mitigation relieves a defendant of the customary burden of producing mitigating evidence or bringing rele-

would have applied. The note argued that the Arizona Supreme Court should adopt a uniform practice of remanding for resentencing instead of conducting the appellate reweighing that *Clemons* authorized. The court's citation of that note, along with its more recent practice of remanding in cases in which *Clemons* would apply, bolster our view that the references to "weighing" in the *Jeffers* opinion do not necessarily suggest that the court performed or intended to perform the appellate reweighing described in the *Clemons* opinion.[11]

4.

We therefore conclude that when the Arizona Supreme Court invalidated one of the aggravating factors upon which the trial court based the sentence of death, Jeffers's sentence could not stand without a new sentencing hearing or a reweighing of the mitigating evidence against the remaining valid aggravating factor. Because the opinion of the Arizona Supreme Court does not clearly demonstrate that the court performed or even intended to perform the careful appellate reweighing described in the *Clemons* opinion, the sentence of death cannot stand.

IV.

Although the transcripts of the testimony of Jeffers's sentencing hearing are now more

than thirteen years old, the Arizona courts must perform a new sentencing calculus. The Arizona Supreme Court has suggested that such resentencing decisions should be based on the freshest testimony possible: "When a defendant is to be resentenced in death cases, evidence and testimony should be as fresh as possible, and ... relying on a previous hearing on mitigation and aggravation conducted months before the imposition of the death penalty is not recommended." *State v. Rossi*, 146 Ariz. 359, 369 n. 2, 706 P.2d 371, 381 n. 2 (1985). We realize, however, that the Constitution does not always require a new sentencing hearing, *see Parker*, 498 U.S. at 321–23, 111 S.Ct. at 740, and it is up to the State of Arizona to determine how it wishes to proceed.[12]

We REVERSE the judgment of the District Court and REMAND for entry of an order directing the State of Arizona to initiate appropriate proceedings in state court within a reasonable period of time.[13]

WILSON, District Judge, dissenting:

The majority again oversteps the proper role of a federal court hearing a challenge to the constitutionality of a death sentence un-

---

vant portions of the record to the court's attention.

**11.** We have found only one other Arizona death penalty case that refers to the *Clemons* opinion: It discusses *Clemons* only briefly and it is clearly distinguishable from the facts of this case. In *State v. Robinson*, 165 Ariz. 51, 796 P.2d 853 (1990), the sentencing court found three aggravating circumstances. The Arizona Supreme Court set one of those aggravating circumstances aside. 165 Ariz. at 60, 796 P.2d at 862. The court then cited *Clemons* and stated that "the elimination of one aggravating factor does not mandate a remand to the trial court for resentencing when the record compels a finding on the issue as a matter of law." The court said that Robinson had offered no mitigating circumstances, the trial court had found no mitigating circumstances, and the court agreed with the trial court that none existed. 165 Ariz. at 61, 796 P.2d at 863. Although the court performed a proportionality review, it never mentioned reweighing. Thus, in the wake of *Clemons*, the *Robinson* decision affirmed without reweighing in a case in which the nonexistence of mitigating circumstances was not even contested and the state supreme court could declare that there were *no* mitigating circumstances at all. In contrast, in Jeffers's case, the Arizona Supreme Court never suggested that

there were *no* mitigating circumstances to weigh against the aggravating factor. Indeed, as we explained earlier in section II.B., there was nonstatutory mitigation evidence to reweigh.

**12.** In this case, the Arizona Supreme Court's discretion to reweigh without remanding, may be constrained by its prior decisions to remand for resentencing in similar cases. *See Clemons*, 494 U.S. at 754–55 n. 5, 110 S.Ct. at 1451 n. 5. In *State v. Lopez*, 163 Ariz. 108, 786 P.2d 959 (1990), the trial court sentenced the defendant to death after finding two aggravating factors and purporting to find no mitigating factors. After concluding that one of the two aggravating factors was invalid, the Arizona Supreme Court remanded to the trial court for resentencing. *Id.* 163 Ariz. at 116, 786 P.2d at 967. The Arizona Supreme Court followed *Lopez* in a similar case. *See State v. Schaaf*, 169 Ariz. 323, 819 P.2d 909 (1991). After finding that one of two aggravating factors was invalid, the court held that it was required to remand for resentencing instead of conducting an appellate reweighing. *Id.* 169 Ariz. at 334–35, 819 P.2d at 920–21.

**13.** In light of our disposition, we have no need to reach the other claims made by Jeffers.

der state law. Accordingly, I must again respectfully dissent.

The majority believes the Arizona Supreme Court may not have discharged its constitutional duty to reweigh the aggravating and mitigating evidence after invalidating one aggravating circumstance and modifying another. The majority's conclusion in this regard is not supported by the record and is wholly at odds with deferential habeas corpus review.

The record in this case shows the sentencing judge and Arizona Supreme Court fully considered all mitigating evidence offered by petitioner and separately concluded this evidence did not call for leniency.

## A. The Sentencing Hearings

Petitioner's claim for leniency principally rested on the argument that his use of heroin, both on the day of the murder and over the long run, diminished his capacity to conform his conduct to the requirements of the law—particularly given his "stormy" love-hate relationship with the victim. These dual themes of intoxication and provocation were presented to the sentencing judge under a single "diminished capacity" argument, both at the first sentencing (6/14/78 RT 60, 64–72),[1] and at the resentencing, (7/10/80 RT 46,127), although they were framed as distinct statutory mitigating circumstances. (7/10/80 RT 173–174, 209–10).

The sentencing judge heard a great deal of evidence at trial concerning petitioner's drug usage, as well as petitioner's relationship with the victim, a former girlfriend. The testimony at trial showed petitioner used heroin on the day of the murder, but the testimony of the only eye witness to the crime showed petitioner's behavior was not impaired in any meaningful way while committing the murder. Petitioner had a high tolerance for heroin (6 RT 110–111, 7 RT 94, 6/20/80 RT 44, 57), and could manage very well on drugs. (8 RT 92). Petitioner's coor-

dination was not impaired while strangling his victim and disposing of the body, (8 RT 91), and his excited and aggressive behavior during the killing was inconsistent with using heroin, which as a depressant, inhibits aggressive behavior. (6/20/80 RT 7, 121).

The testimony at trial also showed that the victim refused to engage in sex with petitioner unless he paid her, and may have provided information to the police about petitioner's criminal activities. The record further shows the court instructed the jury on the requested defenses of intoxication and voluntary manslaughter. (6/14/78 RT 74).

At the original sentencing, petitioner called a psychiatrist who offered his opinion that petitioner's capacity to conform his conduct to societal norms was likely impaired at the time of the killing, given his use of heroin and his stressful relationship with the victim. The state presented no rebuttal expert testimony.

The sentencing judge rejected petitioner's claim of diminished capacity, but clearly considered petitioner's unrebutted evidence:

> Since you have argued to the Court that mitigating circumstances 1 and 2 existed, that if those circumstances exist as you have argued to me, they did exist, that they would not in the Court's judgment be sufficiently substantial to call for leniency in view of the aggravating circumstances in this case.

(6/14/78 RT 87).

On appeal, the Arizona Supreme Court held that, under *Lockett v. Ohio* and *State v. Watson*, petitioner was entitled to present any relevant mitigating evidence, not just the evidence deemed relevant by statute. At the resentencing, petitioner represented the evidence concerning his diminished capacity due to intoxication and provocation, along with a new claim. Petitioner for the first time claimed that he truthfully denied responsibility for the murder while under the influence of sodium amytal.[2]

---

1. This reference is to the reporter's transcript of June 14, 1978. Where a reference to a reporter's transcript is made without a specific date, the citation is to the particular volume of the reporter's transcript of the trial.

2. The majority claims petitioner also introduced evidence of "his difficult childhood," *supra* at p. 1204, but the record shows petitioner's mother testified that her son was "a regular boy" involved in archery and coin collecting until he became involved in narcotics. (6/14/78 RT 78).

The sentencing judge acknowledged its duty to consider "each and every possible mitigating circumstance that is urged," (6/20/80 RT 138), "regardless of whether it's ever been mentioned before." (6/20/80 RT 177).

Petitioner called the same psychiatrist who testified at the first sentencing to explain petitioner's intoxication and duress, as well as to explain the new evidence concerning sodium amytal. Petitioner offered the evidence of his statements under sodium amytal as direct evidence of his innocence—the "ultimate" mitigating evidence. (6/20/80 RT 142–43).[3] Petitioner further suggested the sodium amytal evidence tended to disprove the existence of the two aggravating circumstances previously found by the court. (6/20/80 RT 147).

The state called its own psychiatrist in rebuttal. The state's expert believed petitioner might have been somewhat impaired at the time of the murder, due to his use of heroin and the difficult love-hate relationship with the victim, but rejected petitioner's claim that prolonged use of heroin would in itself cause a lessening in capacity to conform one's conduct to societal norms. (6/20/80 RT 123, 127). The state's psychiatrist further testified that the evidence concerning petitioner's statements under sodium amytal was unreliable since the literature shows most people are able to maintain a lie while under the influence of sodium amytal. (6/20/80 RT 87).[4]

Due to the length of the testimony from the psychiatrists, and the court's interest in reviewing the literature on sodium amytal (6/20/80 RT 144), the court adjourned the sentencing hearing for three weeks. (6/20/80 RT 167). At the reconvened resentencing, final arguments were presented. The sentencing judge then found the same two aggravating circumstances and again concluded petitioner had failed to prove the existence of mitigating circumstances.

I quote at length from the sentencing judge's special verdict to show the sentencer's careful attention to the evidence offered in mitigation:

Mitigating Circumstances, Subsection G. The Court finds that there are no mitigating circumstances. In this regard, the Court has considered all evidence presented in the trial and in the post-trial hearings, the pre-sentence report and all accompanying documents.

The Court has further considered all of the possible mitigating circumstances which were enumerated in subparagraph 1 through 4 of subsection G. under A.R.S. 13–454, and the Court has further considered the possible mitigating circumstances set forth in subparagraph 1 through 5 of the new A.R.S. 13–703, section G.

The Court's Search for mitigating circumstances has not been limited to either of these statutes but pursuant to *State v. Watson* and *Lockwood v. Ohio* (sic) the Court has considered any possible mitigating circumstance.

It is true that the defendant was an addict and was both drinking and using narcotics on the date of the offense, but there is no credible evidence that the defendant's capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law was significantly impaired.

\* \* \* \* \* \*

THE COURT: That's the only thing I could figure out.

MR. KLEIN: That's what it's for.

THE COURT: That's the only thing I could figure out.

MR. KLEIN: I guess that's the ultimate mitigation.

---

Thus, there is no category of mitigating evidence concerning a troubled childhood separate from the evidence concerning petitioner's addiction to drugs.

3. THE COURT: What finding are you expecting the Court to make because of the sodium amytal evidence? Is this directed toward a finding of a mitigating circumstance?

MR. KLEIN: Yes.

THE COURT: What is the mitigating circumstance, that the defendant still maintains his innocence?

MR. KLEIN: That he didn't do the crime, yes.

4. Petitioner's psychiatrist conceded that people can lie under the influence of sodium amytal (RT 63), particularly if they have a vested interest in maintaining the lie (RT 74), although he felt petitioner was not lying.

Likewise, there is no credible evidence that the defendant was under unusual and substantial duress. There is evidence that he may have had reason to be provoked and was under some stress and that he may have had motives for killing Penelope Cheney, but nothing more.

These findings of the existence of aggravating circumstances and the nonexistence of any mitigating circumstances are both made beyond a reasonable doubt.

7/14/80 RT at 216–17.

The majority's effort to premise constitutional error on the sentencing judge's consideration of the mitigating evidence is unsound. The majority claims that sentencing court should have considered petitioner's heroin addiction, intoxication, and relationship with his victim as "nonstatutory mitigating factors," even if the sentencing court correctly determined the evidence did not make out a statutory mitigating circumstance. The majority in effect creates an obligation on the part of state courts to expressly discuss, under the rubric "nonstatutory mitigation," all evidence which falls short of the statutory threshold for mitigation.

The majority's exceedingly technical analysis elevates form over substance without constitutional imperative—and without any justification in the record. It is clear from the transcripts of the sentencing hearings that the judge who sentenced petitioner to death fully considered the evidence of addiction, intoxication, and duress and found no miti-

gating circumstances. The judge said so. The judge properly considered the evidence under the statutory and non-statutory categories of mitigating circumstances.

Moreover, there was no meaningful residual category of evidence left over once the sentencing judge concluded petitioner had failed to prove either statutory mitigating circumstances. Intoxication which does not lead to a significant impairment simply does not call into question the defendant's responsibility for his actions or otherwise further a claim for leniency—i.e., it is not relevant mitigating evidence. The Arizona Supreme Court has recognized as much, holding that intoxication at the time of the murder, without a showing of significant impairment, is not a mitigating circumstance. *State v. Lopez*, 163 Ariz. 108, 114, 786 P.2d 959, 965 (1990); *State v. Rossi*, 146 Ariz. 359, 706 P.2d 371, 379 (1985); *State v. Woratzeck*, 134 Ariz. 452, 458, 657 P.2d 865, 871 (1982).[5]

Likewise, the fact that petitioner was angered by Penelope Cheney's conduct has no tendency to call for leniency unless it can be said that petitioner's emotions interfered with his ability to conform his conduct to the requirements of the law.[6]

On this record, where the transcripts clearly show the sentencing court considered the evidence offered in mitigation, federal habeas corpus review is limited to whether a rational factfinder could have found no mitigating circumstances to be present. *Parker*

---

**5.** The Arizona Supreme Court's determination that evidence of intoxication, without some meaningful level of impairment, is not relevant evidence in mitigation, reflects a considered judgment about the role of drugs and alcohol in capital crimes. The fact that many if not most death-eligible defendants consumed drugs or alcohol prior to committing first degree murder does not alone help to explain why those individuals should be shown mercy. The voluntary act of taking drugs or alcohol has no tendency to mitigate unless it can also be said that the person's behavior was in some significant manner influenced by that act. I believe the Arizona courts may classify such evidence as irrelevant to the issues of mitigation without violating the Constitution. *See Harris v. Pulley*, 885 F.2d 1354, 1383 (9th Cir.1988), *as amended*, (9th Cir. 1989) (courts need not consider as a mitigating circumstance evidence that a death-eligible defendant suffers from an anti-social personality

since that disorder commonly afflicts those who kill), *cert. denied*, 493 U.S. 1051, 110 S.Ct. 854, 107 L.Ed.2d 848 (1990).

**6.** The majority does not dispute the Arizona Supreme Court's conclusion that the sentencing court considered the sodium amytal evidence. This evidence was presented at the resentencing hearing June 20, 1980, involved lengthy examination and cross-examination of two medical expert witnesses, and consisted in part of published articles which the sentencing judge said he read. (7/10/80 RT 177). When the sentencing court concluded beyond a reasonable doubt that petitioner killed Penelope Cheney, this evidence dropped out of the equation. Contrary to the majority's assertion, *supra* at 1205, there was no residual category of sodium amytal evidence left for the Arizona Supreme Court to consider on appeal.

*v. Dugger*, 498 U.S. 308, 321–23, 111 S.Ct. 731, 740, 112 L.Ed.2d 812 (1991) (citing *Lewis v. Jeffers*, 497 U.S. 764, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990)). Under this properly deferential standard, the Arizona sentencing court's finding that petitioner had not proved any mitigating circumstances by a preponderance of the evidence withstands constitutional scrutiny.[7]

Because the sentencing court clearly accepted petitioner's claims as legally relevant to the issue of mitigation, and just as clearly rejected those claims due to the lack of credible evidence in support of them, I cannot agree with the majority's conclusion that the Arizona Supreme Court had mitigating evidence to weigh on appeal.

### B. The Opinion of the Arizona Supreme Court

The record on appeal shows the Arizona Supreme Court independently considered the mitigating evidence offered by petitioner. The Court reviewed in detail the evidence of drug intoxication offered by petitioner, and agreed with the sentencing judge that there was no credible evidence of a significant impairment. *State v. Jeffers*, 135 Ariz. 404, 428, 431, 661 P.2d 1105, 1129, 1132 (1983). The Court likewise surveyed the evidence concerning petitioner's love-hate relationship with the victim, and affirmed the trial court's findings that petitioner had not killed in the heat of passion. *Id.* The Arizona Supreme Court also rejected petitioner's claim that he truthfully maintained his innocence while under the effects of sodium amytal. The Arizona Supreme Court noted that both the defense psychiatrist and state psychiatrist agreed that people can lie while under the influence of sodium amytal. *Id.* The Arizona Supreme Court further stated:

> The trial Court had this medical testimony before it to determine appellant's credi-

bility as well as evidence adduced at trial including appellant's own testimony along with appellant's prior conviction for forgery introduced for impeachment purposes. The record shows the trial court considered all the evidence presented at trial and at the post-trial hearings and found no mitigating facts sufficiently substantial to call for leniency.

*Id.*

The majority makes much of this last sentence, contending that it is unclear whether the Arizona high court agreed with the sentencing court that no mitigating circumstances were present, or that mitigating circumstances were present but were not sufficiently substantial to call for leniency. A fair review of the record shows the Arizona Supreme Court did not modify the sentencing court's findings that petitioner had failed to present credible evidence of any mitigating circumstances. *See Jeffers v. Ricketts*, 627 F.Supp. 1334, 1356 (D.Ariz.1986). More importantly, I don't see how petitioner can complain if the Arizona Supreme Court found some mitigating force in the evidence he presented. Surely if the Arizona Supreme Court credited this marginal mitigating evidence, the Court was capable of discharging its statutory and constitutional duty to weigh that evidence against the remaining aggravating circumstances. The Arizona Supreme Court acknowledged that it was obligated to undertake an independent review, including an independent reweighing of the aggravating and mitigating circumstances. 135 Ariz. at 428, 431–32, 661 P.2d at 1129, 1132–33. The Arizona Supreme Court stated it was reweighing consistent with its legal duty. *Id.* at 431–32, 661 P.2d at 1132–33. State courts are presumed to follow the law. *Walton v. Arizona*, 497 U.S. 639, 652–54, 110 S.Ct. 3047, 3057, 111 L.Ed.2d 511 (1990); *Parker v.*

---

7. Contrary to the majority's claims that the sentencing judge and state supreme court should have expressly discussed the mitigating evidence as "nonstatutory" mitigation, *supra* at pp. 1204 and 1207, due process does not require that the sentencer exhaustively document its analysis of each mitigating factor. *Jeffries v. Blodgett*, 988 F.2d 923, 939 (9th Cir.1993) (citing *Parker v. Dugger*, 498 U.S. 308, 111 S.Ct. 731, 736–38, 112

L.Ed.2d 812 (1991)); *Clark v. Ricketts*, 958 F.2d 851 (9th Cir.1992), *cert. denied sub nom. Clark v. Lewis*, —— U.S. ——, 113 S.Ct. 117, 121 L.Ed.2d 73 (1992). So long as a reviewing federal court can discern from the record that the state court did indeed consider all mitigating evidence offered by the petitioner, nothing more is required. *Id.*

*Dugger*, 498 U.S. at 314–16, 111 S.Ct. at 736. Nothing in the record overcomes this presumption.[8]

This case has travelled through the trial and appellate courts of Arizona and the federal system for thirteen years. Today's holding imposes new obligations on the state courts without justification in the Constitution or in the record—and ultimately to no avail. The courts of Arizona, which carefully evaluated petitioner's mitigating evidence, will now tell this court what everyone else knows: In the judgment of the Arizona courts, the mitigating evidence offered by petitioner thirteen years ago, whether considered as statutory or nonstatutory mitigating circumstances, did not call for leniency then and does not call for leniency now.

I respectfully dissent.

---

8. The majority suggests that the Arizona Supreme Court overlooked relevant mitigating evidence in the form of plea negotiations. Petitioner, however, never presented this evidence as a mitigating factor—not at the first sentencing, not at the resentencing, and not on appeal. Petitioner raised the plea negotiations in his opening appellate brief but only for the limited purpose of arguing that the State of Arizona's subsequent decision to seek the death penalty constituted an impermissible penalty on his right to trial. This familiar constitutional argument has no bearing on whether the Arizona courts adequately considered the mitigating evidence presented by petitioner.