**Jimmie Wayne JEFFERS,
Petitioner–Appellant,**

v.

**Samuel LEWIS, Director, Arizona Department of Corrections; Donald Wawrzaszek, Superintendent, Arizona State Prison, Respondents–Appellees.**

**No. 86–1840.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted (en banc) May 26, 1994.

Decided Sept. 28, 1994.

As Amended Nov. 16, 1994.

---

Frank P. Leto, Donald S. Klein, Asst. Pima County Public Defenders, Tucson, AZ, and Clifford Gardner, Gardner & Derham, San Francisco, CA, for petitioner-appellant.

Paul J. McMurdie, Chief Counsel, Atty. General's Office, Phoenix, AZ, for respondents-appellees.

Before: WALLACE, Chief Judge, and FLETCHER, FARRIS, PREGERSON, NORRIS, BEEZER, WIGGINS, NOONAN, THOMPSON, LEAVY and RYMER, Circuit Judges.

Opinion by Judge DAVID R. THOMPSON; Dissent by Judge PREGERSON; Dissent by Judge NOONAN.

DAVID R. THOMPSON, Circuit Judge:

In 1978, an Arizona jury convicted Jimmie Wayne Jeffers of first degree murder.[1] After a sentencing hearing, the trial court found two aggravating factors and no mitigating circumstances. The court sentenced Jeffers to death, in accordance with the Arizona death penalty statute, Ariz.Rev.Stat. § 13-454 (Supp.1973) (currently Ariz.Rev. Stat. § 13-703 (1989)).

The Arizona Supreme Court vacated Jeffers's death sentence and remanded his case to the trial court for resentencing in light of that court's decision in *State v. Watson*, 120 Ariz. 441, 586 P.2d 1253 (1978), *cert. denied*, 440 U.S. 924, 99 S.Ct. 1254, 59 L.Ed.2d 478 (1979). In *Watson*, the Arizona Supreme Court applied the principles of *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), which held a sentencer in a capital proceeding cannot be restricted to the

---

1. The facts of this case are set forth in greater detail in *Lewis v. Jeffers*, 497 U.S. 764, 766-73, 110 S.Ct. 3092, 3094-98, 111 L.Ed.2d 606 (1990).

specific mitigating factors enumerated in a death penalty statute, but must consider any aspect of a defendant's background or character the defendant offers as a justification for not imposing the death penalty.

On June 20 and July 10, 1980, the trial court held supplemental sentencing hearings. Again it found two aggravating factors: Jeffers created a grave risk of death to a third person in the commission of the murder, and Jeffers committed the murder in an especially heinous, cruel, and depraved manner. *See* Ariz.Rev.Stat. §§ 13–703(F)(3) and (6) (1989). The trial court found no mitigating circumstances and resentenced Jeffers to death.

On review, the Arizona Supreme Court found the evidence insufficient to prove Jeffers knowingly created a grave risk of death to a third person while committing the murder, and invalidated this aggravating factor. *State v. Jeffers*, 135 Ariz. 404, 428–29, 661 P.2d 1105, 1129–30, *cert. denied*, 464 U.S. 865, 78 L.Ed.2d 174 (1983). The Arizona Supreme Court also found the state failed to prove Jeffers committed the murder in an especially "cruel" manner, but determined that "the events surrounding the murder itself support the trial court's finding that the murder was 'especially heinous . ... and depraved.'" *Id.* at 430, 661 P.2d at 1131. The court affirmed Jeffers's death sentence, stating, "In our independent determination we found one aggravating factor—that the offense was committed in an especially heinous and depraved manner—and no mitigating factors sufficiently substantial to call for leniency." *Id.* at 432, 661 P.2d at 1133.

The United States District Court for the District of Arizona denied Jeffers's petition for a writ of habeas corpus. *Jeffers v. Ricketts*, 627 F.Supp. 1334 (D.Ariz.1986). On appeal, a panel of this court granted the writ of habeas corpus and vacated Jeffers's death sentence. The panel held that although the "especially heinous ... or depraved" aggravating factors listed in section 13–703(F)(6) of the Arizona Revised Statutes were constitutional as construed by the Arizona Supreme Court, those factors had not been constitutionally applied in Jeffers's case. *Jeffers v. Ricketts*, 832 F.2d 476, 482–86 (9th Cir.1987).

The Supreme Court reversed, stating it had rejected an identical claim in *Walton v. Arizona*, 497 U.S. 639, 652–55, 110 S.Ct. 3047, 3056–58, 111 L.Ed.2d 511 (1990). *Lewis v. Jeffers*, 497 U.S. 764, 777, 110 S.Ct. 3092, 3100–01, 111 L.Ed.2d 606 (1990). It remanded the case for further proceedings. *Id.* at 784, 110 S.Ct. at 3104.

Following remand, the panel again ordered the writ issued and vacated Jeffers's death sentence. This time the panel held the opinion of the Arizona Supreme Court was not sufficiently clear to permit the panel to determine whether, consistent with *Clemons v. Mississippi*, 494 U.S. 738, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990), the Arizona Supreme Court had reweighed all of the mitigating circumstances against the remaining aggravating factor. *Jeffers v. Lewis*, 5 F.3d 1199, 1206–09 (9th Cir.1992).

We granted en banc review. We now affirm the district court's denial of the writ of habeas corpus.

## DISCUSSION

■ Under *Clemons*, 494 U.S. at 741, 110 S.Ct. at 1444, in a "weighing" state such as Arizona, when a trial court bases its decision to impose a death sentence on both valid and invalid aggravating factors, a state appellate court can affirm the sentence only after performing a harmless-error review, or reweighing the mitigating evidence against the remaining valid aggravating factors. *See Richmond v. Lewis*, — U.S. —, —, 113 S.Ct. 528, 535, 121 L.Ed.2d 411 (1992); *Sochor v. Florida*, — U.S. —, —, 112 S.Ct. 2114, 2119, 119 L.Ed.2d 326 (1992); *Stringer v. Black*, — U.S. —, 112 S.Ct. 1130, 1136, 117 L.Ed.2d 367 (1992). The Supreme Court has never specified the degree of clarity with which a state appellate court must reweigh in order to cure an otherwise invalid death sentence. *See Richmond*, — U.S. at —, 113 S.Ct. at 535.

■ Close state appellate court scrutiny is required, *Stringer*, — U.S. at —, 112 S.Ct. at 1136, but the Court has not said what must appear in the state appellate court's opinion for us to conclude it has satisfied *Clemons's* reweighing requirements.

Justice O'Connor has said, in applying *Clemons's* standard for harmless error review, that "[a]n appellate court's bald assertion" of harmless error without "a principled explanation of how the court reached that conclusion" is not sufficient. *See Sochor,* —— U.S. at ——, 112 S.Ct. at 2123 (O'Connor, J., concurring). On the other hand, the Court has said that a statement by the sentencing court that it considered all mitigating evidence is adequate, *Parker v. Dugger,* 498 U.S. 308, 314–15, 111 S.Ct. 731, 736–37, 112 L.Ed.2d 812 (1991), and in this circuit we presume state courts follow the law, even when they fail to so indicate. *Beam v. Paskett,* 3 F.3d 1301, 1306 (9th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1631, 128 L.Ed.2d 354 (1994).

■ Here, the Arizona Supreme Court not only said it independently reweighed the remaining aggravating factor against the mitigating circumstances, it provided a principled explanation of what it did. It began by acknowledging its obligation under section 13–703(E) of the Arizona Revised Statutes to undertake an independent review of the record to consider the existence of aggravating and mitigating circumstances, and "determine for ourselves if the latter outweigh the former when we find both to be present." *Jeffers,* 135 Ariz. at 428, 661 P.2d at 1129. It then analyzed the evidence before the trial court to evaluate the presence of aggravating and mitigating circumstances. It invalidated one of the aggravating factors found by the trial court, and modified another. *Id.* at 428–30, 661 P.2d at 1129–31. *Cf. Stringer,* —— U.S. at —— ——, 112 S.Ct. at 1136–37.

The court next assessed Jeffers's mitigation evidence. It examined his arguments and the testimony regarding his long-term use of heroin, his use of alcohol and heroin on the date of the murder, his assertion of provocation for the murder, and the statements he made to psychiatrists while under the influence of sodium amytal. *Jeffers,* 135 Ariz. at 430–31, 661 P.2d at 1131–32. Agreeing with the trial court's findings, the Arizona Supreme Court concluded there was no substantial evidence supporting mitigation. *Id.* at 431, 661 P.2d at 1132. The court then stated, "We have carefully reviewed the record as required to determine whether the factors in mitigation outweigh the aggravating circumstances, *State v. Richmond,* 114 Ariz. 186, 560 P.2d 41 (1976), *cert. denied,* 433 U.S. 915, 97 S.Ct. 2988, 53 L.Ed.2d 1101 (1977), and we find they do not." *Jeffers,* 135 Ariz. at 431–32, 661 P.2d at 1132–33.

Even though the Arizona Supreme Court cited *Richmond,* it is clear the court's independent review of the record and its explanation of its reweighing process satisfied the requirements of *Clemons* and *Stringer. See Clemons,* 494 U.S. at 750–52, 110 S.Ct. at 1449–56; *Stringer,* —— U.S. at ——, 112 S.Ct. at 1136.

■ Jeffers, however, argues the Arizona Supreme Court should not have engaged in any reweighing once it invalidated an aggravating factor. He contends the case should have been remanded to the trial court to reweigh the remaining aggravating factors against the mitigating circumstances. He contends this failure to remand to the trial court violated his right to due process under the Fourteenth Amendment. We disagree.

"Following *Clemons,* a reviewing court is not compelled to remand" for resentencing when it invalidates an aggravating factor, so long as it reweighs the evidence independently. *Parker,* 498 U.S. at 320, 111 S.Ct. at 739. *See also Walton,* 497 U.S. at 647, 110 S.Ct. at 3053. Because the Arizona Supreme Court reweighed the aggravating and mitigating circumstances, it was not required to remand the case under federal law.

State law, however, that guarantees a criminal defendant procedural rights at sentencing, may give rise to a state-created liberty interest protected from arbitrary deprivation by the Fourteenth Amendment's Due Process Clause. *See Hicks v. Oklahoma,* 447 U.S. 343, 346, 100 S.Ct. 2227, 2229, 65 L.Ed.2d 175 (1980). *See also Clemons,* 494 U.S. at 746–47, 110 S.Ct. at 1447–48. Jeffers argues the Arizona Supreme Court has created such a liberty interest by uniformly remanding death penalty cases to the trial court after invalidating an aggravating factor. We reject this argument.

In *Clemons,* 494 U.S. at 746–47, 110 S.Ct. at 1447–48, the Supreme Court considered a

similar claim. The Mississippi Supreme Court had invalidated an aggravating factor, and refused to remand to the trial court for a new sentencing hearing. Clemons argued that pursuant to section 99–19–101 of the Mississippi Code, only a jury had the authority to impose a death sentence. The Court, however, held that because in Clemons's case, and other cases, the Mississippi Supreme Court had asserted its authority under state law to decide independently whether a death sentence should be affirmed, Clemons had no "unqualified" liberty interest in having a jury reweigh his aggravating and mitigating circumstances. *Id.* at 747, 110 S.Ct. at 1447–48.

Similarly, the Arizona Supreme Court has not developed a uniform policy of remanding after invalidating an aggravating factor. *See* Karen L. Hinse, Note, *Appellate Review of Death Sentences: An Analysis of the Impact of Clemons v. Mississippi in Arizona,* 34 Ariz.L.Rev. 141, 156–60 (1992). In some cases, the Arizona Supreme Court simply has upheld the death sentence. *See, e.g., State v. Bible,* 175 Ariz. 549, 607, 858 P.2d 1152, 1210 (1993) (after invalidating an aggravating factor, "our response has been more consistent in theory than in practice"), *cert. denied,* — U.S. —, 114 S.Ct. 1578, 128 L.Ed.2d 221 (1994); *State v. Smith,* 146 Ariz. 491, 707 P.2d 289 (1985); *State v. Poland,* 144 Ariz. 388, 698 P.2d 183 (1985), *aff'd,* 476 U.S. 147, 106 S.Ct. 1749, 90 L.Ed.2d 123 (1986); *State v. Gillies,* 142 Ariz. 564, 691 P.2d 655 (1984), *cert. denied,* 470 U.S. 1059, 105 S.Ct. 1775, 84 L.Ed.2d 834 (1985). In others it has remanded for resentencing. *See, e.g., State v. Hinchey,* 165 Ariz. 432, 440, 799 P.2d 352, 360 (1990), *cert. denied,* 499 U.S. 963, 111 S.Ct. 1589, 113 L.Ed.2d 653 (1991). *See also Adamson v. Ricketts,* 865 F.2d 1011, 1038 (9th Cir.1988), *cert. denied sub nom. Lewis v. Adamson,* 497 U.S. 1031, 110 S.Ct. 3287, 111 L.Ed.2d 795 (1990).

An example of the Arizona Supreme Court declining to remand for resentencing is *Bible,* 175 Ariz. at 607, 858 P.2d at 1210. There, the Arizona Supreme Court invalidated one of three aggravating factors found by the trial court. It then assessed the defendant's evidence in mitigation, and stated:

[T]here was no real evidence that Defendant was intoxicated at the time of the offense. The evidence addressing historical familial abuse was marginal and equivocal as to its causal connection with the murder. Defendant's mother did not indicate that Defendant was abused or neglected when he was growing up, and Defendant made no showing that any difficult family history had anything to do with the murder.... Although Defendant's support and love for and by family and friends might have some mitigating force, it does not require a finding of mitigation sufficient to call for leniency.... In sum, our independent review of the record shows no significant mitigating evidence.

*Bible,* 175 Ariz. at 606, 858 P.2d at 1209. Because the Arizona Supreme Court found that Bible's evidence in mitigation was of no more than "de minimis weight," it did not remand but simply upheld his death sentence. *Id.* at 609, 858 P.2d at 1212.

It is apparent from the decisions of the Arizona Supreme Court there is no unqualified right to a remand to the trial court for resentencing when an aggravating factor is invalidated. There is, therefore, no constitutionally recognized state liberty interest in such a procedure. *See Clemons,* 494 U.S. at 747, 110 S.Ct. at 1447–48. *See also United States v. Von Neumann,* 474 U.S. 242, 252, 106 S.Ct. 610, 616, 88 L.Ed.2d 587 (1986) (Burger, J., concurring); *Connecticut Bd. of Pardons v. Dumschat,* 452 U.S. 458, 101 S.Ct. 2460, 69 L.Ed.2d 158 (1981); *Thomas–Lazear v. FBI,* 851 F.2d 1202, 1204–05 (9th Cir.1988); *De Silva v. Smith,* 773 F.2d 1021, 1024 (9th Cir.1985).

Jeffers argues the reweighing process was flawed in any event because the trial court as well as the Arizona Supreme Court failed to consider all of his mitigating evidence, in violation of *Lockett,* 438 U.S. at 604, 98 S.Ct. at 2964, and *Eddings v. Oklahoma,* 455 U.S. 104, 113–14, 102 S.Ct. 869, 876–77, 71 L.Ed.2d 1 (1982).

In a capital case, the "sentencer [may] ... not be precluded from considering, *as a mitigating factor,* any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant

proffers as a basis for a sentence less than death." *Eddings,* 455 U.S. at 110, 102 S.Ct. at 874 (quoting *Lockett,* 438 U.S. at 604, 98 S.Ct. at 2964). *See also Boyde v. California,* 494 U.S. 370, 377–78, 110 S.Ct. 1190, 1196–97, 108 L.Ed.2d 316 (1990); *Mills v. Maryland,* 486 U.S. 367, 374–75, 108 S.Ct. 1860, 1865–66, 100 L.Ed.2d 384 (1988); *Skipper v. South Carolina,* 476 U.S. 1, 4, 106 S.Ct. 1669, 1670–71, 90 L.Ed.2d 1 (1986). Similarly, "the sentencer may not refuse to consider or be precluded from considering 'any relevant mitigating evidence.'" *Id.* (quoting *Eddings,* 455 U.S. at 114, 102 S.Ct. at 877).

Both at trial and at the sentencing hearings, Jeffers offered evidence in mitigation. However, when the trial court first sentenced him to death in 1978, it refused to consider mitigation evidence that did not rise to the level of enumerated statutory mitigating factors. In an unpublished decision, the Arizona Supreme Court vacated Jeffers's death sentence and remanded the case to the trial court with instructions to consider all statutory and non-statutory mitigating evidence and weigh that evidence against any aggravating factors.

Pursuant to that remand, the trial court held two supplemental sentencing hearings. After these hearings the court found:

THE COURT FINDS that there are no mitigating circumstances. In this regard, the Court has considered all evidence presented in the trial and in the post trial hearings, the pre-sentence report and all accompanying documents. The Court has further considered all of the possible mitigating circumstances which where enumerated in.... A.R.S. § 13–454, and the Court has further considered the possible mitigating circumstances set forth in ... the new A.R.S. § 13–703, section G. The Court's search for mitigating circumstances has not been limited to either of these statutes, but pursuant to *State v. Watson* and *Lockwood v. Ohio,* [sic] the Court has considered any possible mitigating circumstances....

The trial court also specifically discussed Jeffers's addiction to drugs and alcohol, his use of drugs and alcohol on the date of the murder (but the lack of credible evidence his capacity was significantly impaired), his age, and the fact that there was no evidence of duress. The court found that while there was some evidence of provocation, stress, and a motive for the killing, such evidence was insufficient to establish mitigating circumstances.

The Arizona Supreme Court also discussed this evidence, and found it insubstantial. *See Jeffers,* 135 Ariz. at 430–31, 661 P.2d at 1131–32. It also found, after its independent review of the record, that the trial court had examined all the evidence presented in mitigation at the trial and post-trial hearings. *Id.,* 135 Ariz. at 431, 661 P.2d at 1132. The record confirms this.

■ Jeffers argues the trial court's failure to list and discuss each item of evidence he offered in mitigation demonstrates the trial court neglected to consider all of his mitigation evidence. To support this argument he relies on *Smith v. McCormick,* 914 F.2d 1153, 1166 (9th Cir.1990), in which we stated that a court must make explicit findings on all relevant mitigating circumstances, "including those it finds insufficient to warrant leniency." Jeffers's reliance on *Smith* is misplaced.

In *Jeffries v. Blodgett,* 5 F.3d 1180, 1196 (9th Cir.1993), *cert. denied,* ––– U.S. –––, 114 S.Ct. 1294, 127 L.Ed.2d 647 (1994), we found the quoted language in *Smith* was dictated by the *Smith* court's interpretation of a "specific state statute requiring the court to make written findings as to the weight of the mitigating evidence."

Here, it is unclear whether Arizona law required the trial court to make specific findings on all items of evidence offered in mitigation. *But see Clark v. Ricketts,* 958 F.2d 851, 858 n. 5 (9th Cir.1991) (Arizona has no listing requirement), *cert. denied sub nom. Clark v. Lewis,* ––– U.S. –––, 113 S.Ct. 117, 121 L.Ed.2d 73 (1992). On the other hand, in *State v. Vickers,* 129 Ariz. 506, 516, 633 P.2d 315, 325 (1981), the Arizona Supreme Court said section 13–703 of the Arizona Revised Statutes does not require a trial court to make such detailed findings, so long as the court heard and considered all of the evidence presented by the defendant. On the

other hand, *State v. Leslie,* 147 Ariz. 38, 50, 708 P.2d 719, 731 (1985), and *State v. Richmond,* 114 Ariz. at 196, 560 P.2d at 51, seem to reach the opposite conclusion.

We do not find a clear requirement under Arizona law that the sentencer must itemize and discuss every piece of evidence offered in mitigation. *Smith* is inapposite. Although such a listing procedure would be helpful to clarify that the trial court considered all mitigation evidence, this is not necessary in the present case. Here, it is clear the trial court considered all evidence Jeffers offered in mitigation.

■ Nor was Jeffers entitled to a specific listing and discussion of each piece of mitigating evidence under federal constitutional law. While "it is important that the record on appeal disclose to the reviewing court the considerations which motivated the death sentence," *Gardner v. Florida,* 430 U.S. 349, 361, 97 S.Ct. 1197, 1206, 51 L.Ed.2d 393 (1977) (plurality opinion), "due process does not require that the sentencer exhaustively document its analysis of each mitigating factor as long as a reviewing federal court can discern from the record that the state court did indeed consider all mitigating evidence offered by the defendant." *Jeffries,* 5 F.3d at 1197. *See also Parker,* 498 U.S. at 313–18, 111 S.Ct. at 735–38; *Clemons,* 494 U.S. at 750, 110 S.Ct. at 1449; *Clark,* 958 F.2d at 858. As discussed above, because it is evident the trial court considered all mitigating evidence offered by Jeffers, there was no due process violation.[2]

■ Jeffers also argues the Arizona sentencing scheme is unconstitutional because it fails to require the state to prove death is the appropriate sentence. This argument lacks merit. In *Walton,* 497 U.S. at 651–52, 110 S.Ct. at 3056–57, the Court held Arizona constitutionally can mandate the imposition

of the death penalty when a sentencer finds the aggravating factors outweigh the mitigating circumstances. *See also Blystone v. Pennsylvania,* 494 U.S. 299, 305, 110 S.Ct. 1078, 1082–83, 108 L.Ed.2d 255 (1990); *Boyde,* 494 U.S. at 377. The Court also held section 13–703(E) of the Arizona Revised Statutes does not automatically require the imposition of the death penalty, or fail to allow for an individualized sentence determination. *Walton,* 497 U.S. at 652, 110 S.Ct. at 3056–57.

■ Jeffers next argues he was impermissibly penalized with the death penalty for exercising his right to a jury trial after he rejected the state's offers of a less harsh sentence in exchange for a guilty plea. He contends the state's last offer would have allowed him to plead guilty to second degree murder and receive a sentence not to exceed twenty years in prison. This argument is meritless.

■ A trial court is not restricted in its sentencing to the terms of a rejected plea offer, *Bordenkircher v. Hayes,* 434 U.S. 357, 363–64, 98 S.Ct. 663, 667–68, 54 L.Ed.2d 604 (1978). Nor does "the prosecutorial practice of threatening a defendant with increased charges if he does not plead guilty, and following through on that threat if the defendant insists on his right to stand trial," *Alabama v. Smith,* 490 U.S. 794, 802, 109 S.Ct. 2201, 2206, 104 L.Ed.2d 865 (1989), create a presumption of vindictive prosecution. *See United States v. Goodwin,* 457 U.S. 368, 378–81, 102 S.Ct. 2485, 2492–93, 73 L.Ed.2d 74 (1982); *Corbitt v. New Jersey,* 439 U.S. 212, 221–23, 99 S.Ct. 492, 498–99, 58 L.Ed.2d 466 (1978); *United States v. Heldt,* 745 F.2d 1275, 1280–81 (9th Cir.1984). In *Bordenkircher,* the defendant voluntarily rejected a pretrial plea offer that would have required a five-year prison sentence. The trial court

---

**2.** Jeffers asserts the trial court failed to evaluate as a mitigating circumstance the fact that on several occasions the state offered him less harsh sentences in exchange for a guilty plea. Because Jeffers failed to argue before the state courts that the state's plea offers constituted mitigating circumstances, if the trial court or the Arizona Supreme Court failed to consider this evidence in sentencing, the neglect is attributable to Jeffers. *Cf. Ake v. Oklahoma,* 470 U.S. 68, 105 S.Ct.

1087, 84 L.Ed.2d 53 (1985). There is no constitutional violation by a sentencer failing to consider mitigating circumstances when a defendant neglects to argue such circumstances exist. *See Blystone v. Pennsylvania,* 494 U.S. 299, 306 n. 4, 110 S.Ct. 1078, 1083 n. 4, 108 L.Ed.2d 255 (1990). *See also Eddings,* 455 U.S. at 115 n. 10, 102 S.Ct. at 877 n. 10 (*"Lockett* requires the sentencer to listen.").

sentenced the defendant to life imprisonment following his conviction. The Court held because the defendant properly was chargeable under the applicable law, and voluntarily chose to reject the plea offer, there was no constitutional violation. *Id.* at 358–59, 98 S.Ct. at 665–66. *See also Corbitt,* 439 U.S. at 221–23, 99 S.Ct. at 499–500.

Jeffers does not contend his rejection of the plea offers was not voluntary, or that he was not chargeable with the death penalty. The district court found he was aware of the risk he was taking in refusing the plea offers, *Jeffers,* 627 F.Supp. at 1361. Jeffers does not dispute this finding.

■ Jeffers next argues Arizona's death penalty statute violates the Equal Protection Clause of the Fourteenth Amendment because section 13–703(B) of the Arizona Revised Statutes requires the trial judge to determine the factual existence of aggravating and mitigating circumstances in a capital case, whereas section 13–604(K) of the Arizona Revised Statutes and Arizona Rule of Criminal Procedure 19.1(b) entitle non-capital defendants to jury hearings for sentence enhancements. *See State v. Sherrill,* 168 Ariz. 469, 472 & n. 2, 815 P.2d 396, 399 & n. 2 (1991). *See also Myers v. Ylst,* 897 F.2d 417 (9th Cir.), *cert. denied,* 498 U.S. 879, 111 S.Ct. 212, 112 L.Ed.2d 172 (1990).

We reject this argument. It is the same argument we confronted and rejected in *Clark,* 958 F.2d at 859. There, relying on *Walton,* 497 U.S. at 647, 110 S.Ct. at 3053–54, we held, "The Constitution does not require that a jury find the aggravating circumstances supporting a death sentence," and merely invoking the equal protection clause does not alter this result. *Clark,* 958 F.2d at 859.

Death penalty sentences are "qualitatively different" from prison sentences. *Woodson v. North Carolina,* 428 U.S. 280, 305, 96 S.Ct. 2978, 2991–92, 49 L.Ed.2d 944 (1976) (plurality opinion). In *Proffitt v. Florida,* 428 U.S. 242, 252, 96 S.Ct. 2960, 2967, 49 L.Ed.2d 913 (1976) (plurality opinion), the Court stated, "[J]udicial sentencing should lead, if anything, to even greater consistency in the imposition at the trial court level of capital punishment, since a trial judge is more expe-

rienced in sentencing than a jury, and therefore is better able to impose sentences similar to those imposed in analogous cases." The decision of the Arizona legislature to vest in the trial judge the responsibility to find aggravating and mitigating circumstances is rational. This process does not render the statute unconstitutional.

■ Jeffers contends Arizona's imposition of the death penalty violates the Equal Protection Clause of the Fourteenth Amendment and the cruel and unusual punishment provision of the Eighth Amendment, because Arizona imposes the death penalty discriminatorily on impoverished males convicted of killing Caucasians. This argument lacks merit.

In *McCleskey v. Kemp,* 481 U.S. 279, 292, 107 S.Ct. 1756, 1767, 95 L.Ed.2d 262 (1987), the Supreme Court held that a defendant alleging discrimination must prove "the decisionmaker[ ] in *his* case acted with a discriminatory purpose." *See also Carriger v. Lewis,* 971 F.2d 329, 334 (9th Cir.1992) (en banc), *cert. denied,* —— U.S. ——, 113 S.Ct. 1600, 123 L.Ed.2d 163 (1993); *Harris v. Pulley,* 885 F.2d 1354, 1373–74 (9th Cir.1988), *cert. denied,* 493 U.S. 1051, 110 S.Ct. 854, 107 L.Ed.2d 848 (1990).

Jeffers is a Caucasian male. His victim was a Caucasian female. He offers no evidence supporting an inference that his economic status or the race or gender of his victim played a part in his sentence, or that such factors create a constitutionally significant risk of impermissible bias in the Arizona capital sentencing process. *See McCleskey,* 481 U.S. at 292, 107 S.Ct. at 1767; *Carriger,* 971 F.2d at 334; *Harris,* 885 F.2d at 1373–74.

## CONCLUSION

The district court's denial of Jeffers's petition for a writ of habeas corpus is AFFIRMED.

PREGERSON, Circuit Judge, with whom Circuit Judges FLETCHER, WILLIAM A. NORRIS and NOONAN join, dissenting:

We respectfully dissent.

The murder of Penelope Cheney is not the prototypical killing that commonly results in imposition of the death penalty, nor even the kind of killing for which prosecutors commonly seek the death penalty. Mr. Jeffers was not a serial killer; he did not kill randomly; he did not kill strangers. He was extremely unstable emotionally. He suffered from a borderline personality disorder, and the sentencing judge heard testimony that Mr. Jeffers used drugs in an attempt to self-medicate this condition. He was a long-term heroin addict and alcoholic. He was under the influence of these drugs at the time of Ms. Cheney's murder.

Cheney was Jeffers's former girlfriend, with whom he experienced a tempestuous relationship. The two were arrested together on charges of possession of drugs and receipt of stolen property. After Jeffers bailed Cheney out of jail, he heard that she was cooperating with the police against him. Soon after he was released from jail on bond he invited her over to his apartment to discuss getting back together. When she came over, they apparently quarreled, and Jeffers killed her.

The cause of Ms. Cheney's death was an overdose of heroin, induced by Jeffers. After she lost consciousness, Jeffers attempted to strangle her, to beat her, and to inject more heroin into her veins. But because she was already unconscious "the victim experienced no pain or mental suffering" as a result of this abuse. *State v. Jeffers*, 135 Ariz. 404, 429, 661 P.2d 1105, 1130 *cert. denied*, 464 U.S. 865, 104 S.Ct. 199, 78 L.Ed.2d 174 (1983).

The evidence warranting the death penalty was not overwhelming. We can roughly gauge the prosecution's assessment of the offense, and its overall view of the case, by the plea offer it initially made that Jeffers declined. The prosecution does not dispute that it offered to permit Jeffers to plead no contest to second degree murder, for which he was to receive eight years in prison be-yond those he was already set to serve on an unrelated offense.

Judge Ben C. Birdsall, the Arizona judge who initially sentenced Jeffers to death, found two aggravating circumstances in the murder: (1) Jeffers had created a grave risk of death to another person; and (2) the murder was committed in an especially heinous, cruel, and depraved manner.

The Arizona Supreme Court reversed Judge Birdsall's finding as to the first aggravating factor. The court also reversed Judge Birdsall's finding that the murder had been committed in a "cruel" manner, as that term is used in the Arizona Revised Statutes. *See* Ariz.Rev.Stat. § 13–703(F)(6).[1] The court upheld only Judge Birdsall's finding that the murder was committed in an especially heinous and depraved manner. It based this determination on Jeffers's treatment of Cheney's body after she lost consciousness.

## I. DISCUSSION.

Arizona is a "weighing state," which means that, in a capital case, state law requires the sentencer to weigh all of the aggravating and mitigating factors against one another "to determine the substance of the two kinds of factors." *Richmond v. Lewis*, —— U.S. ——, ——, 113 S.Ct. 528, 535, 121 L.Ed.2d 411 (1992). The sentencer may impose a death sentence only if it finds that the aggravating factors are weightier than the mitigating ones. *Id.*

Having invalidated one aggravating circumstance, and having partially negated the other, the Arizona Supreme Court should have been guided by the requirements set forth in *Clemons v. Mississippi*, 494 U.S. 738, 752, 110 S.Ct. 1441, 1450, 108 L.Ed.2d 725 (1990). In *Clemons*, the U.S. Supreme Court held that an appellate court in a weighing state may not, consistent with the Eighth Amendment, merely affirm a death penalty after invalidating any of the aggrava-

---

1. Arizona Rev.Stat. § 13–703(F)(6) requires a sentencer to consider, as an aggravating circumstance, whether "[t]he defendant committed the offense in an especially heinous, cruel, or depraved manner."

Following the dictionary definition, the Arizona Supreme Court defines "cruel" as "disposed to inflict pain esp. in a wanton, insensate or vindictive manner; sadistic." 135 Ariz. at 429, 661 P.2d at 1130 (internal quotation marks omitted).

ting factors that formed the basis for the sentence. Rather, the appellate court must ensure that the defendant receives a de novo assessment of the propriety of a sentence of death, based solely on the remaining valid aggravating factors. *See Richmond v. Lewis,* —— U.S. at ——, 113 S.Ct. at 535 (requiring a "new sentencing calculus, if the sentence is to stand"). "While federal law does not require the state appellate court to remand for resentencing, it must, short of remand, either itself reweigh without the invalid aggravating factor or determine that weighing the invalid factor was harmless error." *Sochor v. Florida,* —— U.S. ——, ——, 112 S.Ct. 2114, 2119, 119 L.Ed.2d 326 (1992).

The above principles are well-established, and the dissent agrees with the majority that upon invalidating one aggravating factor, and partially invalidating the only remaining factor, *Clemons* and *Sochor* required the Arizona Supreme Court in the case before us to do one of three things: (1) remand Jeffers's case for resentencing; (2) engage in a de novo reweighing of the aggravating and mitigating factors to determine for itself if death was the appropriate punishment for Mr. Jeffers's crime; or (3) determine that Judge Birdsall's error in overstating the aggravating factors was harmless beyond a reasonable doubt.

The dissent and the majority part company over the majority's assessment that the record in Jeffers's case is sufficiently clear to allow us to determine that the Arizona Supreme Court met the requirements of *Clemons* by actually reweighing the aggravating and mitigating factors before affirming Jeffers's death sentence.

Only a superficial reading of the Arizona Supreme Court's *Jeffers* opinion supports the majority's conclusion that the Arizona court opinion followed the *Clemons* standard. When that opinion is read carefully—in light of the Arizona Supreme Court's understanding, at the time, of its role in the sentencing process—grave doubts arise about whether Jeffers actually received his constitutionally mandated resentencing.

## II. THE ARIZONA SUPREME COURT OPINION IS AMBIGUOUS.

Our review of the Arizona Supreme Court's opinion is guided by the U.S. Supreme Court's opinions in *Clemons* and its progeny. In these cases, the Supreme Court addressed the Eighth Amendment requirements that a state appellate court in a weighing state must follow if it chooses not to remand to the trial court for resentencing after invalidating an aggravating circumstance. The touchstone requirement is "a thorough analysis of the role an invalid aggravating factor played in the sentencing process." *Stringer v. Black,* —— U.S. ——, ——, 112 S.Ct. 1130, 1136, 117 L.Ed.2d 367 (1992).

Our review of the record requires us to be *sure* that the required de novo sentencing or harmless error analysis was *actually* undertaken. *See Clemons,* 494 U.S. at 754, 110 S.Ct. at 1451 (remanding for further proceedings because "we cannot be sure" whether the state supreme court engaged in harmless error analysis). *See also Richmond v. Lewis,* —— U.S. at ——, 113 S.Ct. at 535 ("[a]t a minimum, we must determine that the state court actually reweighed"). Where the appeals court decision does not *clearly* indicate that the required analysis was undertaken, the sentence must be vacated and the case remanded to the state court for resentencing. *Clemons,* 494 U.S. at 741, 110 S.Ct. at 1444 (vacating and remanding "because it is unclear whether the Mississippi Supreme Court correctly" reweighed or applied harmless error analysis). *See also Stringer,* —— U.S. at ——, 112 S.Ct. at 1137 (opinion in *Barclay v. Florida,* 463 U.S. 939, 103 S.Ct. 3418, 77 L.Ed.2d 1134 (1983) is illustrative of the requirements of appellate review, where the Supreme Court affirmed the sentence "only because it was clear" that the state appellate court had engaged in harmless error analysis); *Sochor,* —— U.S. at ——, 112 S.Ct. at 2123 (requiring state appellate court "clarity" about whether it engaged in harmless error analysis). *But see Richmond v. Lewis,* —— U.S. at ——, 113 S.Ct. at 535 (the Supreme Court has not yet specified the *degree* of clarity required).[2]

---

**2.** The majority seriously mischaracterizes *Parker v. Dugger,* 498 U.S. 308, 314–15, 111 S.Ct. 731,

The Arizona Supreme Court's opinion is too ambiguous to satisfy this standard. As the majority notes, the opinion twice refers to the court's obligation to weigh the aggravating and mitigating circumstances. But this alone is not dispositive. In *Clemons*, too, the state appellate court opinion vacated by the U.S. Supreme Court recited that the court had "weighed" the aggravating and mitigating circumstances against each other. *See Clemons*, 494 U.S. at 744, 110 S.Ct. at 1446 (quoting the state supreme court opinion, that noted, after reviewing the record, that " '[i]n our opinion ... the punishment of death is not too great when the aggravating and mitigating circumstances are weighed against each other....' " (Alterations in original.)). The Supreme Court deemed such language *insufficient* because it was *unclear* whether the state court intended to convey the message that it was "conducting appellate reweighing *as we understand the concept.*" *Id.* at 752, 110 S.Ct. at 1450 (emphasis added).

The statements in *State v. Jeffers*, 661 P.2d 1105, are similarly unenlightening. The first reference to weighing in the opinion serves to introduce the Arizona Supreme Court's discussion of the aggravating circumstances. The opinion notes:

> In death penalty cases this court independently reviews the facts that the *trial court found established the presence or absence of mitigating circumstances*, and we determine for ourselves if the latter outweigh the former when we find both to be present. *State v. Blazak*, 114 Ariz. 199,

560 P.2d 54 (1977); *State v. Richmond*, 114 Ariz. 186, 560 P.2d 41 (1976).

*State v. Jeffers*, 135 Ariz. at 428, 661 P.2d at 1129 (emphasis added). Then, after separately discussing Jeffers's proffered mitigating circumstances, and his challenges to the aggravating factors, the court concludes by stating that it has, indeed, weighed the aggravating and mitigating factors. In so doing, the Arizona Supreme Court's opinion uses almost the same language as did the Mississippi Supreme Court in the *Clemons* decision that was reversed by the U.S. Supreme Court. The Arizona Supreme Court opinion states:

> We have carefully reviewed the record as required to determine whether the factors in mitigation outweigh the aggravating circumstances, *State v. Richmond*, 114 Ariz. 186, 560 P.2d 41 (1976), *cert. denied*, 433 U.S. 915 [97 S.Ct. 2988, 53 L.Ed.2d 1101] (1977) and we find they do not.

*State v. Jeffers*, 135 Ariz. at 431–32, 661 P.2d at 1132–33.

Although these statements refer to some sort of weighing, we must be sure that the court was referring to the *de novo* reweighing required by *Clemons*. *Clemons* requires that "[w]here the death sentence has been infected by a vague or otherwise constitutionally invalid aggravating factor, the state appellate court or some other state sentencer must *actually perform a new sentencing calculus*, if the sentence is to stand." *Richmond v. Lewis*, —— U.S. at ——, 113 S.Ct. at 535 (emphasis added). Closely read, the passages quoted above do not suggest such a de novo reweighing. Rather, they indicate that

736–37, 112 L.Ed.2d 812 (1991) as standing for the proposition that "a statement by the sentencing court that it considered all mitigating evidence is adequate." *See* majority opinion at 414–15. If the majority means that such a statement satisfies the *Clemons* requirements, *Parker* says nothing of the sort. In fact, *Parker* supports the dissent's conclusion that *Clemons* requires the record to be sufficiently clear to assure us that the required reweighing or harmless error analysis are in fact conducted.

The discussion cited by the majority refers to the *trial judge's* statement that he had considered all of the evidence before passing sentence, and not to the duty of the *state appellate court* to reweigh under *Clemons*. And in point of fact the United States Supreme Court did *not* accept the

trial court's statement, standing alone, as adequate. Rather, the Court cited several other reasons for its conclusion that the trial judge had, in fact, considered all of the evidence, as he said he did. If the trial judge's statement, standing alone, had been sufficient, the Court would not have found it necessary to cite any other reasons for its finding.

Even more to the point, the state supreme court's statement in *Parker* that "the facts suggesting the sentence of death are so clear and convincing that virtually no reasonable person could differ" was *not* adequate to convince the U.S. Supreme Court that the state supreme court had satisfied *Clemons*. *See id.* at 319, 111 S.Ct. at 738 ("[i]t is unclear what the Florida Supreme Court did here").

the Arizona Supreme Court's "independent review" is limited to the facts "established" by the trial court.

Of even greater import, neither in the above quoted passages, nor elsewhere, does the opinion specify the *nature* of the Arizona Supreme Court's independent review. In other words, although the court "independently reviews" the facts, and determines for itself whether the aggravating circumstances outweigh the mitigating ones, the court does not specify what standard of review it employs to decide whether to disturb the trial court's findings.

The wording of the passages quoted above is consistent with a species of *appellate* review, for error, rather than the "new sentencing calculus" that the Eighth Amendment requires when a death sentence has been infected by invalid aggravating factors. *Richmond v. Lewis,* — U.S. at —, 113 S.Ct. at 535. In fact, as discussed in the following section, the Arizona Supreme Court at the time *State v. Jeffers* was decided in 1983, did *not* generally conduct a de novo review of the death penalty sentencing calculus when it saw fit to invalidate an aggravating factor. Nothing in the Arizona Supreme Court's opinion in *State v. Jeffers* suggests that the court departed from what was then its normal procedure when it reviewed the instant case.

Our confidence that the Arizona Supreme Court actually conducted the requisite "thorough analysis of the role an invalid aggravating factor played in the sentencing process," *Stringer,* — U.S. at —, 112 S.Ct. at 1136, is further shaken by the inconsistencies found in its discussion of the valid and invalid factors. For example, in part of the second passage, quoted above, the Arizona Supreme Court says it has weighed the aggravating "circumstances" in plural. But the court earlier held that there was only *one* such circumstance. This error raises a suspicion that the court substituted boilerplate language for the careful individualized analysis required by the Eighth Amendment.

In addition, the opinion contradicts itself as to which, if any, mitigating factors the court "weighed," or indeed whether the court found or did not find that there were any mitigating circumstances at all. For example, on page — – —, 112 S.Ct. page 1132–33 of the opinion, quoted above, the court asserts that it has *weighed* mitigating factors. In contrast, on page —, 112 S.Ct. page 1133 of the same opinion we are informed that the Arizona Supreme Court found *no* mitigating factors.

Moreover, the Arizona Supreme Court appears to contradict itself on whether it understood *Judge Birdsall* to have found any mitigating circumstances. *Compare, e.g.,* trial court's statement ("[t]he court finds that there are *no* mitigating circumstances") *with State v. Jeffers,* 135 Ariz. at 431, 661 P.2d at 1132 (finding that the trial court "found no mitigating factors *sufficiently substantial to call for leniency*" (emphasis added)). The *State v. Jeffers* opinion is full of such ambiguous and contradictory language on these critical issues, as was fully discussed in the opinion withdrawn by the majority today. *Jeffers v. Lewis,* 5 F.3d 1199 (9th Cir.1993).

So, how can *we* be sure that the Arizona Supreme Court actually reweighed the aggravating and mitigating circumstances in the case at bar, when even the Arizona Attorney General had trouble figuring out whether that court did so? In January of 1991, the Arizona Attorney General implicitly admitted that the Arizona Supreme Court in *Jeffers* did *not* independently reweigh the aggravating and mitigating factors. Respondents Answering Brief, filed January 30, 1991, pp. 9–11.[3] Today the Arizona Attorney

---

**3.** In attempting to distinguish the instant case from *Clemons,* the Arizona Attorney General's 1991 brief correctly stated *Clemons's* holding that a state appellate court may not affirm a death sentence based on invalid aggravating circumstances without either reweighing the aggravating and mitigating circumstances or else performing a harmless error review. The Attorney General next argued that in *Jeffers* the Arizona Supreme Court met this requirement because "it

knew that the *trial court* would ... have imposed the death penalty" even if that court had not overcounted the aggravating factors. *Id.* at 10. In other words, the Arizona Attorney General in effect argued that the Arizona Supreme Court satisfied *Clemons by harmless error review.* The fact that the Arizona Attorney General did not additionally or alternatively argue that the Arizona Supreme Court engaged in a de novo reweighing of aggravating and mitigating circum-

General reads his court's *Jeffers* opinion differently, and argues that the court *did* reweigh the aggravating and mitigating circumstances. We, who are in the dissent, *also* find it difficult to determine whether the Arizona Supreme Court did, or did not, engage in the proper weighing calculus.

## III. THE PRACTICE OF THE ARIZONA SUPREME COURT CONFIRMS THE AMBIGUITY.

The ambiguities discussed above might be less significant if it were otherwise clear that the Arizona Supreme Court understood the requirements of the Eighth Amendment and consistently conducted the required inquiry at the time it delivered the opinion in *State v. Jeffers*. But that is not the case. Rather, a fair reading of Arizona Supreme Court cases on the books in 1983, when *State v. Jeffers* was decided, suggests that that court did not understand the requirements that *Clemons* later explained; moreover, the court was not even clear about whether Arizona was a weighing state.

In fact, the Arizona cases cited in the passages quoted above refer to a kind of review different from that required by *Clemons*. In *State v. Richmond*, decided in 1976, the Arizona Supreme Court described its appellate review process. The court explained that in non-capital cases "[i]t has been our policy not to disturb the sentence imposed by the trial court, absent a clear abuse of discretion." 114 Ariz. at 196, 560 P.2d at 51. In capital cases, however, "we painstakingly examine the record *to determine whether it has been erroneously imposed.*" *Id.* In this context, it is clear that the "independent review" and "reweighing," referred to by the court in *State v. Richmond* and in *State v. Jeffers,* involve appellate review for error, rather than the de novo resentencing required by *Clemons* and its progeny. As the Arizona Supreme Court explained in *State v. Rumsey,* "[w]hile we have an independent duty of review, we perform it as an appellate court, not as a trial court." 136 Ariz. 166, 173, 665 P.2d 48, 55 (1983), *aff'd,* 467 U.S. 203, 104 S.Ct. 2305, 81 L.Ed.2d 164 (1984).

The Arizona death penalty statute, and its interpretive caselaw, provoked a great deal of confusion that was not resolved until 1992, when the U.S. Supreme Court decided *Richmond v. Lewis.* In *Richmond v. Lewis,* the Court for the first time squarely determined that Arizona *is* a weighing state, and therefore invalidated an Arizona Supreme Court decision in which a majority of the Arizona Supreme Court had failed to reweigh the aggravating and mitigating factors as required by *Clemons. Richmond v. Lewis,* —— U.S. at ——, 113 S.Ct. at 537. Before the U.S. Supreme Court decided *Richmond v. Lewis,* however, the Arizona Attorney General argued to the three judge panel which first heard the instant case in 1986 that Arizona was *not* a weighing state. Another panel of our court accepted this argument when it decided the case that was reversed by the Supreme Court in *Richmond v. Lewis. Richmond v. Lewis,* 948 F.2d 1473, 1489 (9th Cir.1990), *rev'd,* —— U.S. ——, 113 S.Ct. 528, 121 L.Ed.2d 411 (1992). As we then read the statute,

> a conclusion by the Arizona Courts that there are no substantial mitigating circumstances is separate from and independent of any conclusion regarding the existence of aggravating circumstances. Invalidation of an aggravating circumstance does *not mandate reweighing* or require resentencing where the court has found that the prosecution has met its burden of establishing aggravation sufficient to warrant the state's harshest penalty ... and that the defense has failed to establish mitigating circumstances sufficiently substantial to call for leniency.... *Nothing in the Arizona statute suggests the need for plenary reweighing* where the record still reveals that there are one or more of the enumerated aggravating circumstances and that there are no mitigating circumstances sufficiently substantial to call for leniency.

*Id.* at 1488–89 (emphasis added, citations and internal quotations omitted, and alterations modified).

In other words, the Arizona Attorney General, at least some Arizona Supreme Court

stances is an implicit admission that it did not do so.

Justices, and the Ninth Circuit were all of the view that Arizona was not a weighing state. It was in this context that the Arizona Supreme Court decided *State v. Jeffers,* which was issued nine years before the Supreme Court held to the contrary in *Richmond v. Lewis,* —— U.S. at ——, 113 S.Ct. at 527, and seven years before *Clemons* was decided.

Under such circumstances, it is *not* reasonable to assume that the Arizona Supreme Court engaged in the requisite reweighing in Jeffers's case. Nor should boilerplate, ambiguous references to "reweighing" be held to demonstrate clearly that the Arizona Supreme Court actually reweighed "as we understand the concept." *Clemons,* 494 U.S. at 752, 110 S.Ct. at 1450. Something more is required. For example, where the requisite de novo analysis is performed we would generally expect to see *some* discussion of the relative weight assigned to the aggravating and mitigating factors and of the reasons for assigning such weight, or at a minimum, some discussion of the two types of factors *in relation to each other.* Such analysis is completely absent here.

It is instructive to compare the conclusory treatment of "reweighing" in *Jeffers v. State* with that in *State v. Bible,* 175 Ariz. 549, 858 P.2d 1152 (1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1578, 128 L.Ed.2d 221 (1994), a case that was decided after *Clemons* and *Richmond v. Lewis.* In *Bible,* the court noted that "in many cases it is simply impossible to determine how the trial judge—who heard the evidence and saw the witnesses—evaluated and weighed that evidence and testimony. Without these imperative determinations, the aggravating and mitigating factors cannot be balanced." *Id.* 175 Ariz. at 608, 858 P.2d at 1211. The Arizona Supreme Court in *Bible* went on to conclude that henceforth *it would remand, rather than engage in a de novo resentencing, in all but the rarest of cases.* The dissent agrees with the Arizona Supreme Court's views in this regard.

In sum, we dissent because we believe that Mr. Jeffers may not have received his constitutionally mandated de novo resentencing. We also believe that the better practice, now followed by the Arizona Supreme Court, is to require reweighing by the tribunal best equipped to handle that process—the trial court.

NOONAN, Circuit Judge, with whom Circuit Judges PREGERSON and WILLIAM A. NORRIS join, dissenting:

Between 1977 and 1992 one person was executed by the state of Arizona. United States Department of Justice, Bureau of Justice Statistics Bulletin, *Capital Punishment 1992,* p. 9, Table 10. In the same fifteen year period 103 persons were sentenced to death in Arizona. *Id.,* p. 11, Appendix Table 2. We are now informed by the Office of the Attorney General of Arizona that there are 117 persons under sentence of death in Arizona, and that no one has been executed in 1993 or 1994. On the face of these facts it appears that the administration of the death penalty in Arizona is so arbitrary as to constitute cruel and unusual punishment in violation of the Eighth Amendment to the Constitution of the United States as made applicable to the state of Arizona by the Fourteenth Amendment.

This contention has not been advanced by Jeffers. But this court has the power when justice requires it to consider sua sponte questions of law "neither pressed nor passed upon by the court or administrative agency below." *Hormel v. Helvering,* 312 U.S. 552, 557, 61 S.Ct. 719, 721, 85 L.Ed. 1037 (1941). Joining Judge Pregerson's dissent, I also dissent from the failure of the court to exercise its power to decide the constitutionality of the Arizona practice as justice requires the court to do.

A populist might say: "The people of Arizona want the death penalty. Our judges impose it. It is you federal judges who by your technical objections delay the speedy execution of the condign sentence. You cannot invoke your obstructionism as a reason for outlawing our chosen method of vindicating human life."

Such a response would appeal only to those ignorant of the laws of Arizona and the United States. Under the law of Arizona every sentence of death is automatically appealed to the Supreme Court of Arizona.

*State v. Bible,* 175 Ariz. 549, 560, 858 P.2d 1152, 1163 (1993); Ariz.R.Crim.P. 26.15, 31.2(b). The entire record is then reviewed by the court. *Bible,* 175 Ariz. at 608–09, 858 P.2d at 1211–12. The record in capital cases has a "voluminous nature." *Id.* at 608, 858 P.2d at 1211. It can, for example, consist in "more than 120 volumes of testimony and numerous exhibits and filings easily exceeding 15,000 pages." *Id.* The study of the record is "time-consuming." *Id.* An opinion in a death penalty case may be over sixty pages in length. *E.g., Bible, supra.* The Supreme Court of Arizona has other appeals, civil and criminal, to decide in addition to death penalty appeals. Consequently, it has, in the years 1991 and 1992, decided only twelve death penalty appeals. In the same period twenty-two persons have been sentenced to death by Arizona trial courts. *Capital Punishment 1992,* p. 11, Appendix Table 2. The work load of the Supreme Court of Arizona alone assures that the number of persons under sentence of death in Arizona and unexecuted will increase if the trial courts continue to impose the death penalty at the same rate as they have imposed it in the past.

It is hypothetically possible, but realistically improbable, that the Supreme Court of Arizona would cease to decide other criminal appeals and all civil appeals and devote itself entirely to eliminating the backlog in death penalty appeals. It is highly unlikely that the people of Arizona would want a Supreme Court whose only business was the decision of death penalty cases. It is hypothetically possible, but realistically improbable, that the Supreme Court of Arizona would abandon its conscientious review of the entire record in death penalty cases and automatically affirm every sentence of death. Such a gratuitous and offensive suggestion has no factual foundation.

The Supreme Court of Arizona conscientiously reviews the entire record for error under the laws and constitution of Arizona and for error under the Constitution of the United States. The United States Supreme Court has found in the Constitution many restraints and limitations on the imposition of death by the state. Since 1967 courts have determined that in over 3,000 cases the death penalty was unconstitutionally imposed. *See* Hugo Adam Bedau, *The Death Penalty in America* (1982) 68. Between 1973 and 1992, 4,704 persons were sentenced to death. In 457 instances the statutes under which they were sentenced were invalidated; in 451 instances their convictions were overturned; in 790 instances, their sentences were set aside as illegal. In all 1,698 persons were found by appellate courts to have been wrongly sentenced to death, a rate of error of over 36%. *Capital Punishment 1992,* p. 10, Appendix Table 1.

Since 1973, the sentence of death has been imposed on 164 persons in Arizona. In 56 of these cases the conviction or the sentence has been judicially reversed. In more than one in three cases, then, a person has been erroneously sentenced to death by an Arizona trial court. *Capital Punishment 1992,* p. 13, Appendix Table 4. It is small wonder that the Supreme Court of Arizona conducts a careful review of death penalty cases to assure that neither state nor federal error has infected the process prejudicially.

There will be federal review after the state courts have finished their work—at least that is a reasonable presumption given the degree of devotion of opponents of the death penalty to exhausting all legal remedies and to the possibility, in at least many cases, of fairly raising a claim that certiorari should be granted by the United States Supreme Court or that habeas corpus should be granted by a federal district court. It is the work of the dedicated lawyers who pursue these legitimate appeals that extends the process and delays final resolution of a case. But these lawyers are not to be faulted for their zeal. They are neither pettifoggers nor fanatics. They are either seeking the application of established constitutional principles or presenting fair and reasoned argument for the extension of established principles. They are doing what any good lawyer always does for his or her client. They are not obstructing the judicial process but serving it.

That there are many precedents to invoke, to be applied or to be extended, is a fact of modern death penalty jurisprudence. That this should be true is not due to the courts

alone but to a substantial shift from earlier centuries in educated opinion about the death penalty. Expressly set as a sanction in the Bible, employed by every European state, the imposition of death as a criminal sanction was routine and righteous. Paradoxically, the incalculable value of human life was affirmed by holding that, if a person took human life, only his own would be sufficient compensation. Then opinion, especially elite opinion, changed. For those without belief in human immortality, there is an awfulness about the utter extinction of a human person. For those who are religious, the deliberate human taking of life appears to be the usurpation of a power that belongs to God. Theorists challenge the state's authority over life. Pragmatists doubt the deterrence supposedly achieved. Most European nations gave up the practice; so did a number of American states. In 1972, the United States Supreme Court came to the verge of declaring the death penalty to be cruel and unusual punishment and therefore unconstitutional.

The verge was reached. The death penalty survived. Hesitant, ambivalent, divided, the Supreme Court surrounded it with qualifications.

The murders for which the death sentence are imposed are of a peculiarly brutal character. They arouse outrage. They provoke the spontaneous reaction, "Such a beast should not be allowed to live!" But no law-abiding person today supposes that the proper response to such crime is lynch law. No law-trained person even supposes that a quick trial, no appeal, and speedy execution would be appropriate. Speed in executing justice has been sacrificed to assuring accuracy in the judgment and fairness in the procedure. Few lawyers or judges today would say, "Subordinate accuracy and fairness to speed."

The result in Arizona is that, as each case is reviewed for accuracy and fairness and each case with its volumes of transcripts passes under the eyes of the reviewing courts, the death sentences imposed have been carried out at the rate of one in seventeen years. To sentence many and execute almost none is to engage "in a gruesome charade." Franklin E. Zimring and Gordon Hawkins, *Capital Punishment and the American Agenda* (1980) 95.

Four arguments may be made to justify such a system as it is administered. First, symbolically the state affirms the value of human life by setting death as the penalty even if the penalty is postponed in its execution; much of law depends on symbols; the importance of a symbol is not to be denigrated. Second, the person who is put to death belongs to a class found to deserve death; there is no unfairness to him if others in the class are spared. Third, persons found to deserve death also deserve to wait for years with death hanging over their heads and if they do not care for this kind of punishment, they should waive all appeals. Fourth, the existence of the death penalty is a bargaining chip for prosecutors to be used by them in persuading a murderer to plead guilty in exchange for a sentence less than death.

To these arguments, it must be answered first that it is one thing to preserve an inanimate object such as the flag as a symbol, another thing to take a human life as a symbol. To take a human life as a symbol suggests human sacrifice as a custom of the state; no rational modern society believes in such a custom. Second, although the death-worthy person is selected more rationally than the victim in a society practicing human sacrifice, his selection from the pool of death-worthy persons is arbitrary. In Arizona he is not chosen on a FIFO basis. Jeffers was first sentenced to death in 1978, but this sentence was not valid. *State v. Jeffers,* 135 Ariz. 404, 661 P.2d 1105 (1983). He was resentenced on July 10, 1980. There were at least eight persons sentenced to death before that date in Arizona who have not been executed. *Capital Punishment 1992,* p. 11, Appendix Table 2. Jeffers is scheduled for execution only because his case was advanced in the process by decisions that bear no rational connection to his special worthiness as a sacrifice; his selection from the pool was arbitrary. Third, a sentence to live under a sentence of death is not a penalty prescribed by Arizona law; mock death cannot be substituted for the real thing. Prisoners cannot be turned into "dead men walking," as once they were at San Quentin in California. *See*

**428**

Helen Prejean, *Dead Man Walking* (1993), 156. Finally, it is unconstitutional to induce a guilty plea by a threat that is itself unconstitutional, which the death penalty is if its administration is cruel and unusual.

Finding Arizona's law as administered to be so irrationally applied as to violate the Eighth Amendment as incorporated by the Fourteenth Amendment, I would grant the relief sought by Jeffers.